**Joseph URBAN, Plaintiff,**

v.

**TALLEYVILLE FIRE COMPANY and Brandywine Raceway Association, Inc., Defendants.**

**Civ. A. No. 81–349.**

United States District Court, D. Delaware.

June 29, 1983.

John Biggs, III of Biggs & Battaglia, Wilmington, Del., Barton Pasternak and Charles F. Love of Freedman & Lorry, P.C., Philadelphia, Pa., for plaintiff.

Wayne N. Elliott and Wayne J. Carey of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant Talleyville Fire Co.

P. Clarkson Collins, Jr. and Clark W. Furlow of Morris, James, Hitchens & Williams, Wilmington, Del., for defendant Brandywine Raceway Ass'n, Inc.

MEMORANDUM OPINION

LATCHUM, Chief Judge.

This diversity action was filed by the plaintiff, Joseph Urban, on August 4, 1981,

seeking compensatory and punitive damages from defendants Talleyville Fire Company ("Talleyville") and Brandywine Raceway Association, Inc. ("Brandywine"). The complaint, in essence, alleges that the plaintiff suffered a heart attack on August 12, 1979, while a patron at Brandywine's racetrack and that the defendants unreasonably and negligently delayed in rendering aid and in transporting plaintiff to the hospital for prompt medical treatment with the result he sustained irreversible damage to his cardiac and vascular systems. (Docket Item ["D.I."] 1.)

Both defendants have moved to dismiss the action pursuant to Rule 25(a)(1), Fed.R. Civ.P., for failure to substitute a party plaintiff within 90 days after plaintiff's death was suggested on the record. (D.I. 42 & 44.) The motions to dismiss, having been fully briefed (D.I. 46, 48, 49, 51 & 53) and orally argued, are ripe for decision.

## I. THE FACTS

The record pertinent to the dismissal motions may be summarized as follows: On August 4, 1981, plaintiff filed this action. (D.I. 1.) Defendant Talleyville on August 28, 1981, (a) answered the complaint denying the allegations of liability (D.I. 6); (b) propounded written interrogatories to plaintiff (D.I. 7); (c) filed a request for production from plaintiff (D.I. 8); and (d) noticed plaintiff's deposition for October 30, 1981 (D.I. 9). Defendant Brandywine, on September 14, 1981, likewise answered the complaint and cross-claimed against Talleyville (D.I. 10) and on September 27, 1981, also propounded interrogatories to and requested production of documents from plaintiff. (D.I. 12 & 13.) On or about October 29, 1981 (the day before the date noticed for plaintiff's deposition), a secretary of the law offices of Freedman and Lorry, P.C., a Philadelphia firm designated "of counsel" on the complaint, called defendants' counsel, cancelled plaintiff's depo-

sition, and informed them that Mr. Urban had died. (D.I. 47, ¶ 3.)

On November 11, 1981, Brandywine's counsel wrote to plaintiff's local attorney requesting to be informed as to the status of outstanding discovery due Brandywine. (*Id.* ¶ 4.) Charles F. Love, Esq., a member of the Freedman and Lorry firm, by letter dated November 20, 1981, replied stating that he hoped to respond to the outstanding discovery before the end of 1981. (*Id.* ¶¶ 5 & 6, Ex. 1.) However, this was not done.

On February 23, 1982, Talleyville's attorney wrote to Mr. Love reminding him that plaintiff had not responded to his discovery requests of August 27, 1981, inquired whether an administrator had been appointed for Mr. Urban's estate, and warned that if he did not hear from him in 10 days, he would be forced to file a motion to compel. (*Id.* ¶ 7, Ex. 2.)

On March 2, 1982, Talleyville properly served and filed, in accordance with Rule 25(a), Fed.R.Civ.P., a suggestion of plaintiff's death upon the record. (D.I. 15.) When plaintiff failed to respond to discovery and after several telephone conversations with Mr. Love, on March 23, 1982, Brandywine's attorney moved to compel discovery. (D.I. 16.) On April 1, 1982, Brandywine's attorney received a copy of a letter from plaintiff's local counsel directed to Mr. Love, his Philadelphia associate counsel, which pointed out that the proposed answers to interrogatories were not signed by a proper plaintiff and inquired whether there was an "estate." (D.I. 47, ¶ 5, Ex. 3.) On April 6, 1982, answers to Talleyville's and Brandywine's interrogatories were filed, but were not verified by a proper party plaintiff but were signed and verified by Joseph Weiner, a member of the Freedman and Lorry law firm.[1] (D.I. 18 & 19.) Thereafter a substantial amount of discovery occurred by and between defendants on Brandywine's cross-claims. (D.I. 18, 19, 25, 26, 27, 28, 33, 36.)

---

1. The Court of Appeals for the Third Circuit has ruled that when a court relies upon answers to interrogatories which are given under oath by the party's attorney, rather than the party, that this constitutes reversible error. *Bracey v. Grenoble,* 494 F.2d 566, 570 n. 7 (3d Cir.1974).

Finally, when no effort was made for some eleven months to substitute a proper party plaintiff after Mr. Urban's death had been suggested on the record, the defendants, on February 14 and 25, 1983, moved to dismiss the complaint pursuant to Rule 25(a)(1), Fed.R.Civ.P.

## II. DISCUSSION

Rule 25(a)(1), Fed.R.Civ.P., provides as follows:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. *Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record* by service of a statement of the fact of the death as provided herein for the service of the motion, *the action shall be dismissed as to the deceased party.*

(Emphasis supplied.)

The above recited facts clearly show that: (1) plaintiff died in October, 1981; (2) defendant Talleyville filed[2] a suggestion of death upon the record on March 2, 1982; and (3) that no effort was made to substitute a proper party as plaintiff within the 90 day period. Indeed, plaintiff's attorneys have not yet filed a proper written motion to substitute a party plaintiff, although they do argue in their brief filed on April 15, 1983, that they should be granted, under Rule 6(b)(2), Fed.R.Civ.P., a 30 day extension of time in which to designate a new party plaintiff. (D.I. 49, at 7–8.) A motion for an extension under Rule 6(b)(2) should be made upon formal application for an order in compliance with the provisions of

Rule 7(b)(1) which requires that applications for an order, unless made during a hearing or trial, shall be made in writing, shall state particularly the grounds therefor and the relief requested. Rule 7(b), Fed.R. Civ.P. To date, no such motion has been filed in this case.

Even ignoring the breach of Rule 7(b), plaintiff's attorneys have not satisfied the requirements of Rule 6(b)(2) by the arguments in their brief.

> Rule 6(b)(2) provides in pertinent part: When by these rules ... an act is required ... to be done at or within a specified time, the court for cause shown may at its discretion ... (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. . . .

The record presented indicates that plaintiff's counsel have completely failed to meet their burden under Rule 6(b)(2) even if a proper motion had been made. Only two arguments are advanced in urging the Court to extend the time. First, plaintiff's brief informs the Court only that "counsel's neglect in failing to promptly substitute a party plaintiff was caused by sheer oversight," (D.I. 49, at 9), and that "when defendant noticed the plaintiff's death of record, counsel inadvertently failed to raise an estate as an appropriate substitute party." (*Id.*) Of course, these statements are an admission of "neglect" but no reasons have been given as to why it is "excusable" under the circumstances of this case. The neglect cannot be attributed to the fact that the matter was never brought to the attorney's attention. On February 23, 1982, Talleyville's attorney asked Philadelphia counsel, 3 months after Mr. Urban's death, "Has an executor or administrator been appointed for Mr. Urban's estate?" (D.I. 47, Ex. 2.) In March, 1982, he was served with a copy of the suggestion of death filed under Rule 25(a)(1). Again on March 30, 1982, plaintiff's Delaware counsel again

---

**2.** The record also shows that copies of the suggestion of plaintiff's death were served upon plaintiff's local and Philadelphia counsel by mail on March 2, 1982, pursuant to Rule 5(b), Fed.R.Civ.P. (D.I. 15.)

called the attention of the Philadelphia attorney to the question of a proper party plaintiff (D.I. 47, Ex. 3), and despite these warnings Philadelphia counsel on April 6, 1982, filed plaintiff's invalid answers to defendants' interrogatories that were verified by another member of his law firm. In view of these several promptings, the Court is unable to conclude that Philadelphia counsel's neglect was either excusable or amounted to a showing of good cause why a 30 day extension should be granted after being in default for more than a year. "Excusable neglect" has been defined as a "course of action taken by a reasonably prudent person under the same or similar circumstances." *U.S. for use of Davison v. York Electric Const. Co.,* 25 F.R.D. 478, 479 (D.N.D.1960). No one could hold under the facts of this case that the failure of plaintiff's Philadelphia counsel to comply with Rule 25 was the action of a reasonably prudent lawyer. *See McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1387 (11th Cir. 1982); *Graham v. Pennsylvania R.R. Co.,* 342 F.2d 914 (D.C.Cir.1965), *cert. denied,* 381 U.S. 904, 85 S.Ct. 1446, 14 L.Ed.2d 286 (1965).

Secondly, plaintiff's brief argues that defendants have shown no prejudice to them by his failure to substitute a proper party plaintiff. However, this argument turns the federal rule upside down because that is an impermissible shifting of the burden for obtaining a Rule 6(b)(2) order extending time. It is firmly established that the burden falls to the moving party to make a good cause showing that the failure to act was the result of excusable neglect. 2 J. Moore's Federal Practice ¶ 6.08 at 1500.70 (1982).

The federal rules of civil procedure were designed "to secure the just, speedy and inexpensive determination of every action." Rule 1, Fed.R.Civ.P. This mandate can only be accomplished when parties follow the rules in a reasonable manner. Indeed, when one side inexcusably fails to comply within a year of the time prescribed by the rules, prejudice to the other side can be implied because such failure tends to deny a speedy and inexpensive resolution of the litigation.

Finally, plaintiff's brief points to the fact that the several depositions and other discovery was undertaken by the parties between March 2, 1983, when plaintiff's death was suggested and the time that defendants moved to dismiss. Plaintiff's brief then contends that defendants have not been denied "one iota of discovery" and thus have not been prejudiced. (D.I. 49, at 4–6.) Plaintiff's counsel also appears to contend that by defendants pursuing discovery, he was lulled into overlooking the 90 day limitation in the rule. The Court is unable to agree. It is true the defendants took the following six depositions as follows:

1. Talleyville deposed plaintiff's widow on April 5, 1982.

2. Talleyville deposed plaintiff's son on April 5, 1982.

3. Brandywine deposed Mr. Woodall, Talleyville officer, on April 27, 1982.

4. Brandywine deposed Mr. Kiley, Chief Deputy Fire Marshal, on April 27, 1982.

5. Talleyville deposed Mr. Molloy, Brandywine's Director of Operations, on July 15, 1982.

6. Talleyville deposed Dr. Gilan, Brandywine's physician, on July 15, 1982.

However, it will be noted that the first four depositions were taken within the 90 day period in which the plaintiff could have made the substitution without recourse to the Court and there was no reason then for defendants to believe it would not be done. The last two depositions, while taken after the 90 day period, were directed to issues arising from Brandywine's cross-claim against Talleyville. Even by July 15, 1982, there was still no reason for the defendants to believe that plaintiff's counsel was not seeking to have an executor or administrator appointed for Mr. Urban's estate. In any event, it is unreasonable to believe that the defendants by undertaking this discovery mislead plaintiff's counsel and the Court finds no legal justification for his one year failure to substitute a proper plaintiff

or to apply timely for an extension if he had valid reasons why such an extension was necessary.

Indeed, plaintiff's counsel ignored Rule 25 for 13 months from the date plaintiff's death was suggested before responding in any way and indeed has yet to file an appropriate motion. However, even if a valid Rule 6(b)(2) motion had been filed contemporaneously with plaintiff's brief on April 15, 1983, evidence of good cause and excusable neglect to justify this Court granting a further 30 day extension has not been shown and the action will be dismissed.

An order will be entered in accordance with this memorandum opinion.