**UNITED STATES of America, Plaintiff,**

**v.**

**ONE HUNDRED THIRTY–SEVEN (137) DRAW POKER–TYPE MACHINES AND SIX (6) SLOT MACHINES, Defendants.**

No. C83–2670.

United States District Court,
N.D. Ohio, E.D.

March 14, 1984.

Emily M. Mirsky, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff.

William L. Summers, Summers, Potts, Kampinski, Tittle & White, Cleveland, Ohio, for Walter Lazuka and Walter Music and Vending Co., Inc.

Neil R. Wilson, Asst. Law Director, City of Mentor, Lake County, Ohio, for City of Mentor.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On June 27, 1983, plaintiff, the United States of America, filed a complaint in forfeiture against one hundred thirty-seven (137) draw poker-type machines and six (6) slot machines. The government contends that these machines are gambling devices as defined in 15 U.S.C. § 1171 and subject to forfeiture to the United States under 15 U.S.C. §§ 1172, 1173(a)(3), and 1177. The case is currently before the court on the government's motion for summary judgment. Fed.R.Civ.P. 56. For the reasons that follow, the government's motion is granted.

On or about July 14, 1982, the City of Mentor Police Department and agents of the Ohio Bureau of Criminal Investigation seized the defendant machines from Walter Lazuka and Walter Music & Vending Co., Inc., for violation of OHIO REV.CODE ANN. § 2915.02 (Page 1982), which makes it unlawful to possess a gambling device with the purpose of promoting a game of chance conducted for profit.[1] In March 1983, Walter Music & Vending Co., Inc. pleaded no contest to two (2) misdemeanor counts of violating OHIO REV.CODE ANN. § 2915.02(A)(5) (Page 1982) and paid a $10,000.00 fine. When the FBI subsequently learned that the defendant machines were to be returned to Walter Lazuka and Walter Music & Vending Co., Inc., it took possession of the machines from the City of Mentor. The government then instituted this forfeiture action pursuant to 15 U.S.C. § 1177. On August 3, 1983, Walter Lazuka and Walter Music & Vending Co., Inc. filed an answer in which they assert that they "are the sole owners and persons entitled to possession of [the defendant machines]." Answer at ¶ 1. They also raise three affirmative defenses: (1) that the defendant machines are not gambling devices within the meaning of 15 U.S.C. § 1171(a)(2) that the provisions of Chapter 24 of the United States Code, 15 U.S.C. §§ 1171–1178, do not apply to the defendant machines, and (3) that the defendant machines were seized without probable cause in violation of the Fourth and Fourteenth Amendments. Answer at ¶¶ 8–17. On August 22, 1983, the City of Mentor also filed an answer in which it conceded "that the United States of America has a right to the forfeiture prayed for in its Amended Complaint,"[2] but claimed that its own interest is superior to the interests of Walter Lazuka and Walter Music & Vending Co., Inc. Answer of the City of Mentor at ¶ 1.

Rule 56(c) of the Federal Rules of Civil Procedure governs the disposition of motions for summary judgment. It provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

1. OHIO REV.CODE ANN. § 2915.02 (Page 1982) provides in pertinent part:
   (A) No person shall:
   (1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking;
   (2) Establish, promote, or operate, or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit;
   (3) Knowingly procure, transmit, exchange, or engage in conduct the facilitates the procurement, transmission, or exchange of, information for use in establishing odds or determining winners in connection with bookmak-

ing or with any scheme or game of chance conducted for profit;
   (4) Engage in betting or in playing any scheme or game of chance, except a charitable bingo game, as a substantial source of income or livelihood;
   (5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device.

2. On June 30, 1983, the government filed an amended complaint for the sole purpose of correcting a typographical error in the original complaint.

moving party is entitled to a judgment as a matter of law.

In addition, Rule 56(e) of the Federal Rules of Civil Procedure provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*See also United States v. Various Slot Machines on Guam,* 658 F.2d 697 (9th Cir.1981); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.), *cert. denied,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

In the present case, the government contends that the defendant machines are subject to forfeiture under 15 U.S.C. § 1177. 15 U.S.C. § 1177 provides in pertinent part:

> Any gambling device transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed, or used in violation of the provisions of this chapter [*i.e.,* 15 U.S.C. §§ 1171–1178] shall be seized and forfeited to the United States. All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws ... shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter....

The term "gambling" device is defined in 15 U.S.C. § 1171(a) as:

> (1) *any so-called "slot machine"* or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) *which when operated may deliver, as the result of the application of an element of chance, any money or property,* or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or

> (2) *any other machine or mechanical device* (including, but not limited to, roulette wheels and similar devices) *designed and manufactured primarily for use in connection with gambling, and* (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) *by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property;* or

> (3) any subassembly or essential part intended to be used in connection with any such machine or mechanical device, but which is not attached to any such machine or mechanical device as a constituent part.

(Emphasis added). The government contends that the six slot machines are gambling devices under subsection 1171(a)(1)(A), and that the 137 draw poker-type machines are gambling devices under subsection 1171(a)(2)(B). Under 15 U.S.C. § 1172, it is unlawful "knowingly to transport any gambling device to any place in a State ... from any place outside of such State" unless the state has enacted a law exempting itself from the provisions of this section.[3] Furthermore, under 15 U.S.C. § 1173(a)(3) it is unlawful "for any person ... to engage in the business of repairing, reconditioning, buying, selling, leasing, using, or making available for use by others any gambling device, if in such business he buys or receives any such device knowing that it has been transported in interstate or foreign commerce ..., unless ... such person has registered with the Attorney General." Thus, the government contends that the defendant machines are gambling devices with the meaning of 15 U.S.C. § 1171 and subject to forfeiture for violation of both 15 U.S.C. § 1172 and 15 U.S.C. § 1173(a)(3).

---

**3.** None of the exemptions applies to the State of Ohio.

■ The burden of proof in a forfeiture action is set forth in 19 U.S.C. § 1615,[4] as incorporated by 15 U.S.C. § 1177. Under this provision, once the government has met its burden of showing probable cause to institute the forfeiture action, the burden then shifts to the claimant to show by a preponderance of the evidence that the property was not subject to forfeiture. *United States v. $22,287.00, United States Currency,* 709 F.2d 442, 446 (6th Cir.1983). The probable cause that the government must show is "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. $22,287.00, United States Currency, supra,* 709 F.2d at 446–47 (quoting *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980)).

■ As indicated previously, only gambling devices within the meaning of 15 U.S.C. § 117(a) are subject to forfeiture under 15 U.S.C. § 1177. Clearly, the six conventional slot machines constitute gambling devices within the meaning of section 1171(a)(1) since this provision specifically includes "any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon."[5] *See United States v. Various Gambling Devices,* 368 F.Supp. 661 (N.D.Miss.1973); *United States v. Three Trade Boosters,* 135 F.Supp. 24 (M.D.Pa.1955). Even if a slot machine is altered so that it cannot accept coins, does not dispense coins, or is not used for gambling, it still remains a gambling device under section 1171. *United States v. Three Trade Boosters, supra.*

A slot machine is not a gambling device merely because it has slots—it is a gambling device because it is designed and manufactured to be used as such. A device manufactured and designed to be used as a gambling device continues to be a gambling device within the contemplation of the law even though, *in fact,* the device is never used for gambling purposes.

135 F.Supp. at 27 (emphasis in original). *See also United States v. Various Slot Machines on Guam,* 658 F.2d 697, 699 (9th Cir.1981) (§ 1171(a)(1)(B) does not require that a slot machine deliver winnings automatically). Thus, the six conventional slot machines constitute gambling devices within the meaning of 15 U.S.C. § 1171(a).

The government also contends that the 137 draw poker-type machines are gambling devices within the meaning of 15 U.S.C. § 1171(a). The defendant draw poker-type machines are electronic video devices, each of which is controlled by a computer called a microprocessor. The computer takes the place of the person who would serve as the dealer in a game of draw poker. Although the 137 machines were manufactured by several companies and bear different names such as Draw Poker, Tarok, or Castles, the internal operations are the same.

The images that appear on the video screen are those of a deck of fifty-two (52) cards containing four (4) suits—hearts, spades, diamonds, clubs—numbered ace through ten (10), and jack, queen, and king, for a total of thirteen (13) cards for each

**4.** 19 U.S.C. § 1615 provides in pertinent part:

In all suits or actions (other than those arising under section 1592 of this title) brought for the forfeiture of any vessel, vehicle, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; and in all suits or actions brought for the recovery of the value of any vessel, vehicle, merchandise, or baggage, because of violation of any such law, the burden of proof shall be upon the defendant: *Provided,* That probable cause shall be first shown for the institution

of such suit or action, to be judged of by the court....

**5.** 15 U.S.C. § 1171(a) provides in pertinent part:

The term "gambling device" means—

(1) any so-called "slot machine" or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property....

suit. Manufacturers may replace the card images with other items such as castles, but these items still equate with a deck of cards divided into four (4) suits, with thirteen (13) different values in each suit.

Each machine will accept from one (1) to eight (8) quarters to begin play. Each quarter inserted is registered on a meter, the coin meter, inside the machine and on the video screen as a credit, usually under the heading "Skill Points."

After inserting the coin(s), the player decides how much to bet on the cards that will appear. Each time the player presses the button marked "Play Credit," a credit is transferred from the "Skill Points" total to the "Bet" total, which appears on the video screen. A player may bet from one (1) to eight (8) quarters per play.

Once the bet is made, the player presses the "Deal" button, and by random selection five (5) cards appear on the video screen. At this point the dealer may stand with the hand received, by pressing the "Stand" button, or may remove cards to be discarded, by pressing the "Discard" button located under each card shown on the screen. If a player makes a mistake after discarding but before he draws new cards, he may press the "Cancel" button to bring back the discarded cards. A player may not add to his bet before he draws.

Once the player has pressed the "Stand" or "Discard" button(s), he then presses the "Draw" button. Additional cards appear by random choice, replacing the discarded cards and the game ends. If a player wins, the word "Winner" appears on the video screen, and a number of credits are awarded under "Skill Points," depending on the hand obtained at the end of the game.

The front of the machine displays the number of credits awarded for a particular hand (e.g., straight flush, fifty (50); four of a kind, twenty-five (25); full house, ten (10); flush, eight (8); straight, five (5); three of a kind, three (3); two pair, two (2);

and a pair of aces, one (1). The only single pair that wins is aces. Each credit represents a play of the machine and, therefore, holds the value of a quarter to the player.

If more than one credit is bet, the amount to be awarded for a winning hand is multiplied by the credits bet. Thus, it is possible to win four hundred (400) credits on one game by betting eight (8) credits, $2.00 worth of quarters, and receiving a straight flush (valued at fifty (50) credits). As each of these four hundred (400) credits represents a play of the machine and thereby holds the value of a quarter to the player, these credits translate into $100.00 worth of plays on the machine.[6]

■ In order for the defendant draw poker-type machines to be subject to forfeiture under 15 U.S.C. § 1177, they must fall within the definition of gambling devices contained in 15 U.S.C. § 1171(a). Under this provision, the term "gambling device" includes, in addition to slot machines:

> (2) any other machine or mechanical device (including, but not limited to, roulette wheels and similar devices) *designed and manufactured primarily for use in connection with gambling, and* (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) *by the operation of which a person may become entitled to receive, as the result of the application of an element of change, any money or property* ....

(Emphasis added). Thus, a machine need not dispense a player's winnings automatically in order to fall within the definition contained in this statute.

The legislative history of this provision is instructive. In 1962, Congress passed the "Gambling Devices Act of 1962," which replaced a more limited definition of the term "gambling device" with the one now

---

**6.** The basic description and mechanics of these machines is not in dispute. *See* Answers to Plaintiff's First Set of Requests for Admissions, Interrogatories, and Requests for Production of Documents; Affidavit of William L. Holmes (Dec. 27, 1983).

codified at 15 U.S.C. § 1171.[7] In House Report No. 1828, the Committee on Interstate and Foreign Commerce described the need for this legislation:

Eleven years of experience in the enforcement of this law show that there are serious inadequacies in it which must be corrected. New gambling machines have been developed which are controlled by syndicated crime, but which are not subject to the provisions of the Johnson Act because they are not coin-operated, do not pay off directly or indirectly, and do not have a drum or reel as in the conventional slot machine. Principally they are pinball machines which afford players an opportunity if certain combinations are achieved to register a great number of free games, in some instances up to 999 free games. These machines usually have a mechanism whereby the player can change the odds merely by inserting more money into the machine or increase the number of balls that can be played by inserting more money. These free games can be played off or they can be eliminated from the machine by pressing a button or lever. The number of accumulated free games eliminated from the machine are recorded by a meter and payment to the player for the number of free games canceled is made by the proprietor of the establishment where the gambling machine is located or by his agent.

The committee bill broadens the definition of the term "gambling device" in the Johnson Act so as to include such pinball machines and any other mechanical devices which are designed and manufactured primarily for use in connection with gambling and which when operated may deliver as a result of the application of an element of chance any money or property, either directly or indirectly.

Pinball and other machines, intended for amusement only, which award a limited number of free plays that are not convertible to money or other things of value, are not covered by this legislation.

H.R.Rep. No. 1828, 87th Cong., 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Ad. News 3809, 3811.

From this recitation of legislative history, it is clear that the defendant draw poker-type machines, although technically more advanced, differ little in purpose and design from the machines that Congress sought to prohibit through the Gambling Devices Act of 1962. Indeed, these new machines have many of the same features described in the House Report over twenty years ago. These features include: (1) the option of paying from one to eight quarters for a single play, (2) the potential for winning an inordinate number of free games (*e.g.*, up to 400 on a single play), (3) the ability to "knock off" or eliminate accumulated free games from a machine, and (4) devices for measuring the number of free games eliminated from the machine. *See* Affidavit of William L. Holmes (Dec. 27, 1983).

In *United States v. Two Coin-Operated Pinball Machine*, 241 F.Supp. 57 (W.D.Ky. 1965), *aff'd sub nom. United States v. M. Branson Distributing Co.*, 398 F.2d 929 (6th Cir.1968), the district court concluded that two machines with features similar to those in the present case were gambling devices within the meaning of 15 U.S.C. § 1171(a) and subject to forfeiture under 15 U.S.C. § 1177. The district court made the following pertinent findings of fact:

---

7. *See* Pub.L. No. 87–840, 76 Stat. 1075 (1962). Prior to 1962, gambling devices were defined in 15 U.S.C. § 1171(a) as:

(1) "slot machines" and other machines and mechanical devices, an essential part of which is a drum or reel with insignia thereon, which when operated may deliver as a result of the application of an element of chance any money or property or which may entitle the player to receive money or property; (2) machines and mechanical devices designed and manufactured to operate by means of insertion of a coin, token, or similar object, and designed and manufactured so that when operated they may deliver, as a result of the application of an element of chance, any money or property; and (3) sub-assemblies or essential parts of such machines and devices.

H.R.Rep. No. 1828, 87th Cong., 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Ad.News 3809, 3811.

3. The great number of free games which can be achieved by players, the provision for multiple coin insertion in order to increase the reward for successful play, the facility with which free plays can be eliminated from the free play register and the ease by which free plays so eliminated can be counted renders these devices peculiarly and uniquely suited for gambling purposes.

4. Successful play of these devices cannot be achieved by the application of skill and depends upon the result of the application of an element of chance.

5. The successful player of these devices will win not only a right to replay the devices but also the opportunity to have free games redeemed for cash or merchandise.

241 F.Supp. at 59. The court then concluded:

> The respondent machines are gambling devices as defined in 15 U.S.C. § 1171 in that they are designed and manufactured primarily for use in connection with gambling and by the operation of which a person may become entitled to receive as a result of an application of an element of chance money or property.

241 F.Supp. at 59. The court added that the respondent machines "are not exempted from the application of Chapter 24 of Title 15, U.S.C. by virtue of any exception contained in 15 U.S.C. § 1178 or any other section of Chapter 24." 241 F.Supp. at 59.

■ In the present case, there can be no doubt that the defendant draw poker-type machines are designed and manufactured primarily for use in connection with gambling and by the operation of which a person may become entitled to receive, as the result of the application of an element of chance,[8] money or property. The previously described features of these machines, which are not in dispute, demonstrate that these machines are gambling devices within the meaning of 15 U.S.C. § 1171(a)(2).[9] *Accord United States v. Various Slot Machines on Guam, supra; United States v. Various Gambling Devices, supra,* 368 F.Supp. at 663; *United States v. Two Coin-Operated Pinball Machines, supra;* H.R.Rep. No. 1828, 87th Cong., 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Ad. News 3809, 3811. Furthermore, these same features also refute any claim that the machines are exempt from the application of Chapter 24 of Title 15, 15 U.S.C. §§ 1171–1178, by virtue of an exception contained in 15 U.S.C. § 1178. *United States v. Two Coin-Operated Pinball Machines, supra;* H.R.Rep. No. 1828, 87th Cong., 2d Sess., *reprinted in* [1962] U.S. Code Cong. & Ad.News 3809, 3811.[10]

---

**8.** Any claim that the money or property which a person may become entitled to receive does not depend upon the application of an element of chance is without merit. *See* Affidavit of William L. Holmes at ¶¶ 10–19 (Dec. 27, 1983).

**9.** While the government contends that these machines are gambling devices under subsection 1171(a)(2)(A) as well as subsection 1171(a)(2)(B), the court need not address the government's claim that the free games awarded for winning combinations constitute property within the meaning of subsection 1171(a)(2)(A). Rather, the court finds, as a matter of law, that these machines are gambling devices within the meaning of 15 U.S.C. § 1171(a)(2)(B).

**10.** 15 U.S.C. § 1178 provides:
None of the provisions of this chapter shall be construed to apply—
(1) to any machine or mechanical device designed and manufactured primarily for use at a racetrack in connection with parimutuel betting,

(2) to any machine or mechanical device, such as a coin-operated bowling alley, shuffleboard, marble machine (a so-called pinball machine), or mechanical gun, which is not designed and manufactured primarily for use in connection with gambling, and (A) which when operated does not deliver, as a result of the application of an element of chance, any money or property, or (B) by the operation of which a person may not become entitled to receive, as the result of the application of an element of chance, any money or property, or
(3) to any so-called claw, crane, or digger machines and similar devices which are not operated by coin, are actuated by a crank, and are designed and manufactured primarily for use at carnivals or county or State fairs.
None of the three exemptions contained in 15 U.S.C. § 1178 encompasses the defendant draw poker-type machines. Exemptions (1) and (3) are clearly inapplicable, and exemption (2) is limited to "[p]inball and other machines, intended for amusement only, *which award a limited*

Thus, there is no genuine issue of material fact as to whether the defendant machines are gambling devices within the meaning of 15 U.S.C. § 1171(a). Fed.R.Civ.P. 56(c), (e); *United States v. Various Slot Machines on Guam, supra.*

■ In order for the defendant machines to be subject to forfeiture under 15 U.S.C. § 1177, the government must also establish that the machines were "transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed, or used in violation of [15 U.S.C. § 1171–1178]." The government makes two arguments. First, it contends that the machines were transported into Ohio in violation of 15 U.S.C. § 1172. Second, it contends that the machines were used in violation of 15 U.S.C. § 1173(a)(3). The court will address these arguments separately.

Under 15 U.S.C. § 1172, it is unlawful "knowingly to transport any gambling device to any place in a State ... from any place outside of such state" unless the state has enacted a law exempting itself from the provisions of this law. Ohio has not exempted itself from the provisions of this law. Indeed, under Ohio law, the defendant machines are gambling devices *per se, Mills-Jennings of Ohio, Inc. v. Department of Liquor Control,* 70 Ohio St.2d 95, 435 N.E.2d 407 (1982), and possessing such machines with the purpose of establishing, promoting, or operating a game of chance conducted for profit is a violation of OHIO REV.CODE ANN. § 2915.02(A)(5) (Page 1982).[11] Since Walter Lazuka and Walter Music & Vending Co., Inc. have admitted that the defendant machines were manufactured outside the State of Ohio and transported into Ohio after 1962,[12] the only logical deduction to be made is that the transporter (whether it was Walter Lazuka, Walter Music & Vending Co., Inc., or some-

one else) knew the machines had moved in interstate commerce, thus meeting the knowledge requirement of 15 U.S.C. § 1172. *See United States v. 5 Gambling Devices,* 346 F.Supp. 999, 1005 (W.D.La. 1972). The purchaser's good faith has no bearing on the issue of forfeiture, since scienter on the part of the owner "is not a material fact in an *in rem* action against the machines under Section 1177." *North Beach Amusement Co. v. United States,* 240 F.2d 729, 732 (4th Cir.1957). Thus, there is no genuine issue of material fact as to whether these machines were transported into Ohio in violation of 15 U.S.C. § 1172.

■ Moreover, even if these machines were not transported into Ohio in violation of 15 U.S.C. § 1172, they would still be subject to forfeiture for violation of 15 U.S.C. § 1173(a)(3). Under 15 U.S.C. § 1173(a)(3), it is unlawful "for any person to engage in the business of repairing, reconditioning, buying, selling, leasing, using, or making available for use by others any gambling device, if in such business he buys or receives any such device knowing that it has been transported in interstate or foreign commerce ..., unless ... such person has registered with the Attorney General." Since Walter Lazuka and Walter Music & Vending Co., Inc. have admitted that the defendant machines were not manufactured in Ohio and that the machines were transported into Ohio from a place outside Ohio,[13] it is unquestioned that they received the machines knowing that they had been transported in interstate commerce. It is also unquestioned that these parties claim ownership of the machines and that Walter Music & Vending Co., Inc. is engaged in the business of placing, leasing, and distributing coin-operated game machines in various locations within Ohio. Finally, neither Walter Lazuka, Walter Mu-

---

number of free plays that are not convertible to money or other things of value." H.R.Rep. No. 1828, 87th Cong., 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Ad.News 3809, 3811 (emphasis added).

**11.** *See* note 1, *supra.*

**12.** Answers to Requests for Admissions Nos. 3–5; Affidavit of William L. Holmes (Dec. 27, 1983) at ¶¶ 24–25.

**13.** *See* note 12, *supra.*

sic & Vending Co., Inc., nor anyone on their behalf has registered with the United States Attorney General as required under 15 U.S.C. § 1173(a)(3).[14] Thus, there is no genuine issue of material fact as to whether the defendant machines are subject to forfeiture for violation of 15 U.S.C. § 1173(a)(3). *Accord United States v. Various Gambling Devices, supra,* 368 F.Supp. at 662–64.

After examining the entire record, the court finds that the government has met its burden of showing conclusively that there exists no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Smith v. Hudson, supra. See also United States v. Various Slot Machines on Guam,* 658 F.2d 697 (9th Cir.1981) (granting government's motion for summary judgment in forfeiture action brought pursuant to 15 U.S.C. § 1177).

Thus, under Fed.R.Civ.P. 56(e), the adverse parties "may not rest upon the mere allegations of [their] pleadings." Rather, they must set forth, "by affidavits or as otherwise provided in [Rule 56], ... specific facts showing that there is a genuine issue for trial." *See also Smith v. Hudson, supra,* 600 F.2d at 63–65. In the present case, however, Walter Lazuka and Walter Music & Vending Co., Inc. have failed to respond timely to the government's motion for summary judgment, despite the court's granting them an extension of time to respond.[15]

Accordingly, the court finds that the defendant machines are gambling devices within the meaning of 15 U.S.C. § 1171(a) and subject to forfeiture pursuant to 15 U.S.C. §§ 1172, 1173(a)(3), and 1177.[16] The

**14.** Affidavit of Frederick D. Hess (July 11, 1983).

**15.** The government filed its motion for summary judgment on January 25, 1984. Thus, under L.Civ.R. 3.01 and Fed.R.Civ.P. 6(e), Walter Lazuka and Walter Music & Vending Co. Inc. had thirteen (13) days to respond to the government's motion (*i.e.,* until February 7, 1984). On February 6, 1984, the claimants filed a request pursuant to Fed.R.Civ.P. 6(b)(1), for an extension of time (twenty-one (21) days) to respond to the government's motion, and on February 14, 1984 the court granted the claimants an extension of time until March 1, 1984. The claimants, however, have neither filed a timely response to the government's motion, nor requested an extension of time pursuant to Fed.R. Civ.P. 6(b). Rather, on March 8, 1984, the claimants filed a "Motion to Determine Sufficiency of Answers or Objections to Requests for Admissions," and on March 9, 1984, they filed a "Brief in Opposition to Plaintiff's Motion for Summary Judgment and Claimant's Motion for a Continuance per Rule 56(f) with Affidavit."

Fed.R.Civ.P. 6(b) provides in pertinent part: When by these rules ... an act is required ... to be done at or within a specified time, the court for cause shown may at its discretion ... (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect....

*See also* Fed.R.Civ.P. 7(b)(1). The court's power to enlarge time under Fed.R.Civ.P. 6(b) should be employed to achieve "the just, speedy, and inexpensive determination of every action" as required by Fed.R.Civ.P. 1. *See generally,* 4 C. Wright & A. Miller, *Federal Practice and Proce-*

*dure* § 1165 (1969 & Supp.1983). Since the claimants have not even attempted to demonstrate that their failure to respond was the result of "excusable neglect," this court may refuse to accept the claimants' untimely brief. *Accord McLaughlin v. City of LaGrange,* 662 F.2d 1385 (11th Cir.1981) (denial of appellants' motion for additional time to respond to motion for summary judgment was not an abuse of discretion), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982); *Farina v. Mission Investment Trust,* 615 F.2d 1068, 1076 (5th Cir.1980) ("absent an affirmative showing by the non-moving party of excusable neglect, according to Rule 6(b) a court does not abuse its discretion when it refuses to accept out-of-time affidavits" opposing a motion for summary judgment); *Urban v. Talleyville Fire Co.,* 98 F.R.D. 634, 637 (D.Del.1983) ("It is firmly established that the burden falls to the moving party to make a good cause showing that the failure to act was the result of excusable neglect.").

While the claimants contend that the government's answers to their discovery requests are incomplete, the court notes that the government filed its answers to these requests on January 23, 1984. Thus, the claimants were aware of the government's allegedly incomplete answers long before the time for responding to the government's motion had expired. Moreover, the claimants have failed to indicate how a favorable resolution of these disputed discovery requests would create a genuine issue of material fact. Indeed, to the extent that these discovery requests are designed to demonstrate an illegal search or seizure, they are irrelevant. *See* note 16, *infra.*

**16.** The affirmative defenses contained in the answer of Walter Lazuka and Walter Music &

government's motion for summary judgment is granted. Fed.R.Civ.P. 56.

IT IS SO ORDERED.

Vending Co., Inc. are all without merit. As indicated previously, both the legislative history to the Gambling Devices Act of 1962 and the subsequent case law demonstrate that the defendant machines are gambling devices within the meaning of 15 U.S.C. § 1172(a) and that none of the exemptions listed in 15 U.S.C. § 1178 are applicable. Finally, with regard to the claim that these machines were seized in violation of the Fourth and Fourteenth Amendment, the courts have held uniformly that "an illegal seizure does not immunize the goods from forfeiture." *United States v. An Article of Device "Theramatic"*, 715 F.2d 1339, 1341 (9th Cir.1983); *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 450–51 (9th Cir.1983); *Unit-ed States v. Deane Hill Country Club, Inc.*, 342 F.2d 794 (6th Cir.) (even if search were illegal, Country Club would not be entitled to return of 13 slot machines), *cert. denied*, 381 U.S. 937, 85 S.Ct. 1769 (1965); *United States v. One Bally "Barrel-O-Fun" Coin Operated Gaming Device*, 14 L.Ed.2d 701, 224 F.Supp. 794 (M.D.Pa.1963), *aff'd. sub nom. Brozzetti v. Rogers*, 337 F.2d 857 (3d Cir.1964) (per curiam). *See also United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (exclusionary rule does not extend to forbid the use in federal civil proceedings of evidence illegally seized by state officials). Thus, even if the defendant machines were seized illegally, this third affirmative defense would be without merit.