**UNITED STATES of America, Plaintiff,**

**v.**

**TWO–HUNDRED–NINETY–FOUR VARIOUS GAMBLING DEVICES and $24,-674.00 in United States Coins, Defendants.**

**Civ. A. No. 85–297 ERIE.**

United States District Court,
W.D. Pennsylvania.

March 2, 1990.

Ernest J. DiSantis, Jr., Asst. U.S. Atty., Erie, Pa., for plaintiff.

John L. Doherty, Pittsburgh, Pa., Robert C. Brabender, James K. McNamara and Sumner E. Nicholas, II, Erie, Pa., Gary B. Zimmerman, Pittsburgh, Pa., William F.

Scarpitti, David G. Ridge and Roger H. Taft, Erie, Pa., for claimant.

## OPINION

COHILL, Chief Judge.

In August 1989, the late Judge Gerald J. Weber issued an extensive Opinion in this case, concluding that most of the video poker machines seized here were subject to forfeiture under the Gambling Devices Act of 1962, 15 U.S.C. § 1171 *et seq.* *United States v. 294 Various Gambling Devices,* 718 F.Supp. 1236 (W.D.Pa.1989). Upon Judge Weber's untimely passing, this matter fell to the undersigned.

We will not repeat the facts or the procedural history of this case. The prior Opinion contains a clear, concise recitation. 718 F.Supp. at 1239–1241. Suffice it to say that this is an action *in rem* for the forfeiture of a variety of video game machines, most of which depict the game of video poker.

Although the prior Opinion disposed of much of this case on summary judgment, several issues remain unresolved. The government has filed a supplemental motion for summary judgment with additional evidentiary material. Several claimants renewed their cross motions for summary judgment as well. All parties have had an opportunity to respond and to supplement the record if so desired. We now address the issues presented.

### A.) *Disassembled Machines*

At issue are 35 machines in various stages of disassembly. Some machines are substantially complete but inoperative for some reason. Others are little more than a box, with all the major components stripped away. In the course of this litigation these machines have been lumped together in a group designated Category 5:

> 5. Devices which were not operational, different stages of disassembly, but may contain knockoff meters and switches or provisions for knockoff switches and meters.

From the government's perspective, the inoperative status of the Category 5 machines presents a problem of proof.[1] With the machines inoperative the government cannot demonstrate directly the many factors described in the prior Opinion as being indicative of a gambling device. For example, because a machine will not operate, the government cannot demonstrate limited time of play, the ability to accumulate inordinately large numbers of free games, or the operation of or capacity for knockoff switches and meters. Indeed the government may not even be able to determine by direct evidence that the machine depicts the game of video poker.

But the government is not limited to direct evidence derived from operation of the game. In this case, extensive unrebutted circumstantial evidence establishes that many of the Category 5 machines were and are gambling devices prohibited by the statute.

In this case the government's expert was able to compare many of the Category 5 machines to certain machines previously determined in this litigation to be illegal gambling devices. Examination of such physical factors as size, shape and markings of the cabinet, indelible images burnt into the video screen, console design and play-button arrangement, location and style of the wiring harness, location and style of the printed circuit board, location and style of the coin slot, and location of mounting holes and interior hardware establishes that many of the partially disassembled machines are identical in model and manufacture to machines previously determined to have been designed and manufactured to facilitate gambling and which when operated could produce a reward to the player on the basis of chance.

For example, the government's expert examined Exhibit 8, a Category 5 machine at issue here. This machine was compared with Exhibits 6 and 7, machines previously determined to be gambling devices under the federal statute. Examination of these

---

1. In the prior Opinion, Judge Weber found all video poker machines in Categories 1–4 to be gambling devices forfeit under the Act.

three machines reveals that the cabinet, matrix, button console, mounting holes and wiring harness in each machine are identical. Comparison of the photographs in evidence shows that the machines are identical in appearance. This physical evidence establishes that Exhibit 8 is an El Grande model video poker machine made by Tuni Manufacturing. In the prior Opinion in this case, machines of the same model and manufacture, specifically Exhibits 6 and 7, were found to be illegal gambling devices.

There is no contrary evidence in the record. Claimants have not attempted to distinguish Exhibit 8 from Exhibits 6 and 7. Consequently, there is no factual dispute and summary judgment is appropriate.

But claimants argue that Exhibit 8 in its inoperative, partially disassembled state simply *cannot* be a gambling device. It cannot be played and therefore it cannot receive consideration and provide a reward based on chance.

Claimants' factual premise is undeniable. Each Category 5 machine in its present state is incapable of functioning as a gambling device. But, as Judge Weber made clear in his prior Opinion, the present condition of a machine is largely irrelevant under the federal statute. The critical issue is not what the machine is today, but whether the machine was *designed and manufactured* to facilitate gambling. 15 U.S.C. § 1171(a)(2); 718 F.Supp. at 1242. Subsequent alterations or deletion of features will not alter the nature of the devices, even if the alterations are intended to sanitize the machine and eliminate features most relevant to gambling. *Id.,* 718 F.Supp. at 1247; *United States v. Ansani,* 240 F.2d 216, 220 (7th Cir.1957); *United States v. 137 Draw Poker–Type Machines,* 606 F.Supp. 747 (N.D.Ohio 1984), *aff'd* 765 F.2d 147 (6th Cir.1985); *United States v. 24 Digger Merchandising Machines,* 202 F.2d 647 (8th Cir.1953); *United States v. Three (3) Trade Boosters,* 135 F.Supp. 24 (M.D.Pa.1955). Likewise, a malfunction or removal of significant components which renders a machine inoperative will not alter the circumstances of its design and manufacture.

Admittedly no reported Opinion discusses inoperative partially disassembled machines. But the mere fact that a machine is disabled, intentionally or otherwise, does not change its original character and purpose. For example, if the owner of a machine with all the indicia of a gambling device removed the printed circuit board, the machine would not function. It would nonetheless be a machine which as designed and manufactured could provide a reward upon application of chance and thereby facilitate gambling. It would therefore still be a gambling device within the meaning of the Act.

We believe this is a fair reading of the statute, and one that is consistent with the cases cited above concerning trade boosters and sanitized machines. We conclude therefore that if inoperative machines are identifiable by make and model as devices previously determined to be designed and manufactured to facilitate gambling and which, as designed and manufactured are capable of producing a reward based on chance, they are gambling devices within the meaning of the Act.

Claimants argue that the Category 5 machines are now merely generic devices, as capable of becoming trivia games as video poker machines. Claimants also argue that the government's position followed logically to its conclusion produces an absurdity: that virtually any device, given enough time, effort and new parts, can become a gambling device. The flaw in these arguments is that they look to the future. As discussed above, the critical issue under the statute is not what a machine can become, but rather what it was designed and manufactured to be. E.g. *United States v. Ansani,* 240 F.2d at 221 (fact that a trade booster may be used with a non-gambling device does not render it any less a part or subassembly intended to be used as part of a gambling device). The appearance and physical attributes of the Category 5 machines establishes without doubt that each one depicted the game of video poker and most were of a make and model previously determined to be forfeit as a gambling device.

The government's expert compared 30 Category 5 machines to previously forfeited machines and set forth the factual similarities in a supplemental affidavit. These facts stand unrebutted and clearly establish that 27 of these machines [2] are identical in model and manufacture to an illegal, forfeited counterpart. Although these machines are inoperative and partially disassembled, because each is of a make and model found to have been designed and manufactured to facilitate gambling, they are illegal devices under § 1171(a)(2) and forfeit.[3]

We are unable to concur with the government on 3 of the 30 machines which it asserts are identical to previously forfeited machines. (Exhs. 95, 174, 280). Our review of the photographs in evidence here discloses obvious differences between the paired machines, such as differences in cabinets, buttons or the game depicted. While these differences may ultimately be superficial, they are significant enough to raise doubts as to whether these machines are of a make and model previously determined to be forfeit. Summary judgment is therefore inappropriate for these three machines.

■ Finally, we note that for five Category 5 machines (Exhibits 93, 157, 185, 195, 250) the government was unable to present any comparison with previously forfeited machines. These machines may be unique among the machines seized, or they may be hybrids created from various parts, but in any event they are not susceptible of disposition on summary judgment. At this point we know little of these machines other than they appear to depict a game of video poker. We know nothing of the characteristics of play on these five machines, or the many other factors recited in the prior Opinion which are indicative of a gambling device. Absent evidence on such matters, summary judgment must be denied.

### B.) *Blackjack Machines/Reel–Type Machine*

■ In the prior Opinion, Judge Weber decried the lack of evidence on these three machines. 718 F.Supp. 1251. In their rush to battle over video poker, the parties ignored these other games. (Exhibits 94, 275, 276).

Little has changed since then. Although the government's expert submitted a supplemental affidavit, the two pages devoted to these machines contain no more than a cursory description and a conclusory opinion. There is no evidence of such relevant factors as time of play, absence of skill, retention ratio, potentially large numbers of free games, ability to accumulate credits, multiple coin features, disguised knock-off switches and accounting functions. Indeed there is no mention of these factors at all.

We have learned one thing from the expert's supplemental affidavit. Contrary to the government's assertions in its original brief, Exhibit 94 is apparently *not* a reel-type slot machine as defined in § 1171(a)(1). It apparently does not contain a drum or reel as required by that prong of the statute, but rather operates by a random sequence of flashing lights. In the absence of a drum or reel, the government must establish that it is a gambling device under § 1171(a)(2). Summary judgment on Exhibits 94, 275 and 276 will therefore be denied.

### C.) *Coins*

■ Still in issue is $24,674.00 in coins found in the machines at the time of seizure. Both sides have renewed their requests for summary judgment on disposition of this sum.

Recently the government discovered an additional $563.95 in the various machines when they were moved from storage. The government requested leave to amend the Complaint to include this additional sum. The government acted promptly after dis-

---

**2.** Exhibits 8, 12, 85, 88, 91, 92, 96, 124, 153, 184, 186–188, 218, 271, 281–292.

**3.** The court's rationale in the prior Opinion concerning interstate transport under § 1172 and failure to register, § 1173(a)(3), is equally applicable to the machines in issue here. 718 F.Supp. at 1250–1251.

covering the additional coins and there appears to be no prejudice to claimants. The amendment will not change the factual or legal issues in this matter, but will provide a larger pot in the event claimants are successful on some of the machines. The government's motion to amend will therefore be granted, making the new total $25,237.95.

As described in the prior Opinion, 718 F.Supp. at 1251, our position is complicated by the government's failure to record the amount collected from each machine. The government simply recorded the total of all coins retrieved from the machines, preventing any measure of precision in apportioning coins between forfeit machines and those not forfeit.

Under the circumstances we will attempt to make as equitable a distribution as possible. Absent any better suggestions from the parties, we believe the most appropriate remedy is as follows. Divide the sum total of $25,237.95 by the number of machines which held coins at the time of seizure, producing an average amount per machine. This would exclude many of the Category 5 machines which held no coins in their inoperative disassembled state in warehouses, and thereby would prevent dilution of the average. The government would then be entitled to forfeiture of the average amount for each forfeited machine which held coins at the time of seizure.

Unfortunately, the government has not provided a complete list of machines with coins and machines without. Without this information we cannot compute the average per machine. We will therefore require the government to submit this information forthwith so that we may compute the amount of money to be forfeited.

Of the original 294 machines seized, all but 11 have been forfeited to the government. Of these 11 remaining machines, only 1 contained coins at the time of seizure.[4] This machine may ultimately be forfeit as well if the government is able to prevail at trial, but upon the government's submission of the above-described information we can dispose of most of the money

and retain an appropriate share for Exhibit 195.

## CONCLUSION

For the reasons stated above, we conclude that summary judgment in favor of the government is warranted on most of the Category 5 machines. We also conclude that a proportional share of the cash seized from the machines will be forfeit according to the formula described above.

Unfortunately, the evidence on several machines is inadequate to support summary judgment in favor of either side, and the fate of these machines must be decided at trial. Also, the government has failed to provide the factual data necessary to compute the amount of money to be forfeited, and summary judgment in a dollar amount cannot be entered at this time.

An appropriate Order accompanies this Opinion.

## ORDER

AND NOW, this 2nd day of March, 1990, in accord with the accompanying Opinion, it is hereby ORDERED:

1. Summary Judgment is ENTERED in favor of the government as to the following Category 5 machines:

   7, 12, 85, 88, 91, 92, 96, 124, 153, 184, 186–188, 218, 271, 281–292.

2. Summary Judgment is DENIED as to the following Category 5 machines:

   93, 95, 157, 174, 185, 195, 250, 280.

3. Summary Judgment is DENIED as to the Blackjack machines and the slot machine:

   94, 275, 276.

4. On or before March 15, 1990, the government shall submit an affidavit containing a list of all seized machines with a notation as to each, stating whether the machine contained coins at time of seizure. If claimants contest the government's data, claimants shall file any contrary evidence on or before March 25, 1990.

---

**4.** Exhibit 195, "Pot-of-Gold" seized from Mous- ie's Bar, claimed by Romeo Amusement.

5. The government shall file a Pretrial Statement on the remaining machines in issue, on or before March 10, 1990.

6. Claimants shall file Pretrial Statements on or before March 25, 1990.

7. A Pretrial Conference and Trial will be scheduled thereafter.