**UNITED STATES of America, Plaintiff,**

v.

**TWO (2) QUARTER FALL MACHINES; and $431.21 in U.S. Currency, Seized at Premises of Brewer's Exxon, Route 1, McDonald, Tennessee, Defendants.**

No. CIV-1-90-148.

United States District Court,
E.D. Tennessee, S.D.

May 22, 1991.

---

Pamela G. Steele, Asst. U.S. Atty., Knoxville, Tenn., for plaintiff.

Kenneth L. Miller, Cleveland, Tenn., for defendants.

## MEMORANDUM

EDGAR, District Judge.

### I.

This is an action for forfeiture *in rem* brought by the United States under the Gambling Devices Act of 1962, 15 U.S.C. §§ 1171–1178, against two quarter fall machines and $431.21 in United States currency. The machines and currency were seized pursuant to a seizure warrant from Brewer's Exxon in Bradley County, Tennessee, on October 26, 1989. John Brewer, proprietor of Brewer's Exxon, has filed a timely notice of claim to the seized machines and cash. This case came before the Court, sitting without a jury, for trial on May 17, 1991.

### II.

The Government's right to forfeiture rests on 15 U.S.C. § 1177 which provides in part that:

> Any gambling device transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed, or used in violation of the provisions of this chapter [15 U.S.C. §§ 1171–1178] shall be seized and forfeited to the United States.

■  Once the Government has met its burden of showing probable cause to institute this forfeiture action, the burden shifts to the claimant to show by a preponderance of the evidence that the property is not subject to forfeiture. 19 U.S.C. § 1615; *United States v. 526 Liscum Dr., Dayton, Montgomery County*, 866 F.2d 213, 216 (6th Cir.1988); *United States v. 137 Draw Poker-type Machines and 6 Slot Machines*, 606 F.Supp. 747, 751 (N.D.Ohio 1984), *aff'd*, 765 F.2d 147 (6th Cir.1985).

The first issue which has been raised is whether a quarter fall machine is a "gambling device" as defined in 15 U.S.C. § 1171(a)(2), which provides that:

The term "gambling device" means ... any other machine or mechanical device (including, but not limited to, roulette wheels and similar devices) designed and manufactured primarily for use in connection with gambling, and (A) which when operated may deliver, as a result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as a result of the application of an element of chance, any money or property....

The quarter fall machines found in Mr. Brewer's Exxon station were comprised of a stand-up box, the frame of which was made of wood or some form of composition material. The upper part of the face of the box is clear plastic to enable the player of the machine to look inside to see two trays of quarters, one above the other.

The player inserts a quarter into a slot at the top of the machine. This slot is movable left to right for a distance of about eight inches, although the player can only vary the landing spot for the quarter by about four to five inches. The coin lands on the top tray where a sweeper arm (which is a mirror to give the illusion of there being more coins present) moves the coin toward a mass of quarters on the top tray. If the player is fortunate, a quarter will fall from the top tray to the tray below as a result of the addition of the player's quarter to the pile of quarters on the top tray. This won't happen as readily as it would appear to the player, however, because there is a lip on the edge of the top tray which tends to collect quarters that look like they might be about to fall.

If a quarter is indeed pushed off the top tray and onto the lower tray, it might encounter another mirrored sweeper arm. It is unlikely that this will happen immediately, however, since that arm will be moving away from the pile of quarters on the lower shelf. These sweeper arms are moving constantly, but in opposite directions.

The player is not able to control the movement of the sweeper arms.

Before any quarters fall off the lower tray to pay off the player, they encounter three more obstacles. These are (1) an "out of bounds" area which returns quarters from both ends of the lower tray to the "house" in the form of a container located within the machine; (2) another ledge like that on the top tray to collect quarters; and (3) a set of screws which are covered with quarters and not visible to the player, but nevertheless impede the path of the quarters to the edge of the tray. The payoff of the machine may be adjusted by varying the amount of quarters in the machine and by varying the height of the screws on the bottom tray.

When Tennessee Bureau of Investigation ("TBI") Agent Frank McCauley, acting undercover, placed $4.00 in quarters in the machines on August 2, 1989, he won 50 cents. When TBI Agent Ross Haynes filled the machine with $200.00 in quarters in the courtroom at trial and played $8.00 in quarters, he won $1.50. The "house" also won $1.50.

The Brewer machines had a ticket slot which supposedly dispensed a ticket or coupon each time a quarter was inserted into the machine. These tickets were, according to Mr. Brewer, redeemable for prizes such as combs, stuffed California Raisins, cigarette lighters, leather billfolds, and costume jewelry. In small print under the ticket slot, there was this language:

Ticket worth a .25 (cent) prize! Save tickets for large prizes! If you don't get a ticket each time you play, or are dissatisfied, see attendant for reimbursement.

Unfortunately, the ticket dispenser did not always work. It was, for instance, not working when Agent McCauley operated the machine in August of 1989. No one ever asked for a ticket or for their money back. The price of the "prizes" was set abnormally high. Agent McCauley noticed that a pair of costume jewelry earrings was going for 300 tickets ($75.00 worth of quarters). Mr. Brewer himself testified that a $30.00 cigarette lighter might be redeemed

for 600 to 1,000 tickets ($150.00 to $250.00).[1]

There is virtually no skill involved in operating these quarter fall machines. The movable slot gives the appearance that one can control the fall of the quarters in a meaningful manner. This, however, is illusory. The player cannot control the sweepers, and really has no control over when and how quarters fall into the payoff chute. The payoff depends exclusively on how the coins are piled up at the time the player inserts quarters. It is clear that these machines are intended to deliver quarters as a result of an element of chance. Therefore, they are gambling devices under 15 U.S.C. § 1171(a)(2).

### III.

The other principal issue presented here is whether, as required by 15 U.S.C. § 1177, these quarter fall machines were "transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed, or used in violations of the provisions of [15 U.S.C. §§ 1171–1178]."

■ 15 U.S.C. § 1173(b) requires that manufacturers of gambling devices must permanently label them with the manufacturer's name, a serial number and date of manufacture. No such label appears on the machines found at Brewer's Exxon. Thus, it appears that these machines were indeed manufactured in violation of the Gambling Devices Act of 1962.

■ Moreover, 15 U.S.C. § 1172 makes it unlawful knowingly to transport a gambling device into a state from outside a state unless the state to which the device is being transported has exempted itself from the provisions of the Gambling Devices Act. Tennessee has enacted no such exemption. It is possible that these machines were actually assembled in Tennessee, although Mr. Brewer has not borne his burden of proof that they indeed were. However, assuming that they were manufactured in Tennessee, the proof shows that various parts of the machines were manu-

factured elsewhere. The frame came from Monroeville, Alabama; the ticket dispenser from Landsdale, Pennsylvania; and the control panel from Mexico. These components, even if they were transported into Tennessee dissembled, are still gambling devices subject to forfeiture under the statute. *United States v. Two–Hundred–Ninety–Four Gambling Devices*, 731 F.Supp. 1246, 1248 (W.D.Pa.1990). This is because 15 U.S.C. § 1171(a)(3) specifically provides that a "gambling device" means:

Any subassembly or essential part intended to be used in connection with any such machine or mechanical device but which is not attached to any such machine or mechanical device as a constituent part.

Therefore, since the parts themselves were transported to Tennessee from elsewhere, it is of no consequence that they may have been assembled into the finished machine within the State of Tennessee. Because parts of the machines were manufactured elsewhere, the machines were transported into Tennessee in violation of 15 U.S.C. § 1172.

■ Mr. Brewer contends that 15 U.S.C. § 1172 does not apply to these machines because he purchased them locally and had no knowledge that they, or any parts thereof, had been transported into Tennessee. In an *in rem* action, Mr. Brewer's knowledge is not material. *United States v. Two–Hundred–Ninety–Four Various Gambling Devices*, 718 F.Supp. 1236, 1250 (W.D.Pa.1989); *United States v. Draw Poker-type Machines and Six Slot Machines*, 606 F.Supp. at 755. It is obvious that whoever transported the parts into Tennessee knew that they had been manufactured elsewhere. Mr. Brewer has not produced any evidence to the contrary.

Finally, 15 U.S.C. § 1173(a)(3), taken together with 15 U.S.C. § 1177, provides that gambling devices are subject to forfeiture if they are in the possession of any person who has failed to properly register them where the person has purchased or received the device knowing that it has been

---

1. Of course, the player might also have won a few quarters along the way—but not many.

transported in interstate or foreign commerce. It is not disputed that these quarter fall machines were not registered. Although Mr. Brewer purchased them locally, again, his knowledge is not here material. It is obvious that either the manufacturer or some prior owner possessed these machines, or the parts thereof, knowing that the parts had been transported into Tennessee from elsewhere.

Therefore, the two quarter fall machines were transported, manufactured, possessed and used in violation of 15 U.S.C. §§ 1173(b), 1172, and 1173(a)(3).

### IV.

■ Although Mr. Brewer has not made any attempt to distinguish the cash from the machines themselves, it is apparent that the cash, which was found in the machines, in fact functioned as part of the machines and is also therefore subject to forfeiture under 15 U.S.C. § 1177.