UNITED STATES of America,
Libelant,

v.

TWO COIN–OPERATED PINBALL MACHINES, Nos. B–1197 and B–1378,
Respondents.

Civ. A. No. 4727.

United States District Court
W. D. Kentucky,
at Louisville.

March 26, 1965.

Boyce F. Martin, Jr., U. S. Atty., for W. D. Ky., Wm. E. Scent, former U. S. Atty., Louisville, Ky., for W. D. Ky., for libelant, United States of America.

Ben T. Cooper, Louisville, Ky., and Paul R. Connolly, Washington, D. C., for respondents and claimants.

BROOKS, Chief Judge.

This matter having come on regularly for hearing before the Court and a Jury,

upon the Amended Libel filed for and on behalf of the Libelant, United States of America, and upon the Answer to the Libel filed for and on behalf of the Claimants, H. M. Branson Distributing Company, a Kentucky corporation, with its principal place of business at 814 East Broadway, Louisville, Kentucky and Lion Manufacturing Corporation, an Illinois corporation, with its principal place of business at 2640 Belmont Avenue, Chicago, Illinois; and both the Libelant and the Claimants having presented their evidence and arguments at the conclusion of which the Court submitted to the Jury the following interrogatory:

"Were the Two Coin-Operated Pinball Machines, Nos. B–1197 and B–1378, Respondents, designed and manufactured primarily for use in connection with gambling and by the operation of which a person may become entitled to receive as the result of the application of an element of chance any money or property?" To which interrogatory the Jury responded in the affirmative and after hearing further argument by the parties hereto, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. That subsequent to February 4, 1964, the respondents, Two Coin-Operated Pinball Machines, Nos. B–1197 and B–1378 were transported from Chicago, Illinois to Louisville, Kentucky.

2. That the respondents are coin activated electrically operated machines. The machines when assembled and ready for use consist of a vertical section attached to a base section to which are secured four legs. The base section contains a plunger device, a number of holes drilled into an inclined playboard and a quantity of posts with rubber bumpers placed at intervals thereon. The devices are each equipped with eight metal balls, five of which are released for play upon insertion of a coin. The vertical section has a glass front upon which the results of play are recorded by electrically operated equipment. The object of play of the devices is to propel the balls by means of the plunger onto the inclined playboard so that the ball will fall into certain holes and thereby light corresponding light bulbs located on the vertical section of the machines. When three or more bulbs are lit in a row, or in some other predetermined order, the machine registers so-called "free plays." The machines are so constructed that any number of coins may be inserted therein before actual play of the game begins. The number of "free plays" to be awarded for successful operation of the device can be increased by insertion of additional coins prior to play of the machine, although the rate of increase of free play awards cannot be controlled by the player and may or may not increase upon the insertion of a particular coin. The machine also provides other "features", the most prominent of which is denominated "skill-shot" which will award a designated number of "free plays" if the first ball played falls into any of several predesignated holes. After striking the ball with the plunger, the ball is propelled onto the playboard and descends the inclined plane totally dependent upon the law of gravity and chance contacts with the posts affixed to the board. The player has no control over this descent and only negligible, if any, skill is involved in the operation or play of the device. Free plays won on the machine are recorded on a three-digit counting meter (Replay register). The register is numbered so that it will apparently record 999 free games but a stop is contained in these devices so that, in fact, the register will record only 899 free games. Free games so recorded may be used by depressing appropriate buttons to activate the machine; to activate the mechanism which controls the increase of the free game awards, or to activate other features of the machine. Each such use decreases the number shown on the replay register by one. The replay register can be immediately cleared by operation of an on-off switch located on the base section of the device or by disconnecting the device from its power source and then reconnecting it. Inside the base section are

located two additional meters referred to as the total plays meter and the re-plays meter. The total plays meter records the number of coins inserted in the device and the number of free plays used in the play of the machine. The replays meter records the total number of free plays which have been won on the play of the machine. Subtracting the total registered on the replays meter and the total of coins in the coin box from the total registered on the total plays meter will result in the number of free games eliminated from the machine without being used in play. The devices are so equipped that the replay meter may be readily rewired in order to record only the number of free games so eliminated.

3. The great number of free games which can be achieved by players, the provision for multiple coin insertion in order to increase the reward for successful play, the facility with which free plays can be eliminated from the free play register and the ease by which free plays so eliminated can be counted renders these devices peculiarly and uniquely suited for gambling purposes.

4. Successful play of these devices cannot be achieved by the application of skill and depends upon the result of the application of an element of chance.

5. The successful player of these devices will win not only a right to replay the devices but also the opportunity to have free games redeemed for cash or merchandise.

## CONCLUSIONS OF LAW

1. The respondent machines are ~ambling devices as defined in 15 U.S.C. § 1171 in that they are designed and manufactured primarily for use in connection with gambling and by the operation of which a person may become entitled to receive as a result of an application of an element of chance money or property.

2. The respondent machines are not specifically enumerated as lawful devices in Section 436.230(5), Kentucky Revised Statutes.

3. The respondent devices are not exempted from the application of Chapter 24 of Title 15, U.S.C. by virtue of any exception contained in 15 U.S.C. § 1178 or any other section of Chapter 24.

4. Chapter 24 of Title 15, U.S. C. as applied to the respondent devices is a constitutional exercise of the legislative power.

5. Transportation of respondent devices in interstate commerce is prohibited by Section 1172 of Title 15 U. S.C.

6. The respondent devices are guilty and subject to be condemned and forfeited to the United States, pursuant to the provisions of Section 1177 of Title 15.

7. The libelant is entitled to a decree of forfeiture.