**UNITED STATES of America,**
**Plaintiff,**

**v.**

**VARIOUS GAMBLING DEVICES,**
**Defendants,**

**Dominic Fratesi and Raymond Ristom,**
**Claimants.**

**UNITED STATES of America,**
**Plaintiff,**

**v.**

**VARIOUS GAMBLING DEVICES,**
**Defendants,**

**Abe J. Malouf, Claimant.**

**Nos. GC 71–29 to GC 71–34, GC 71–22 to GC 71–25, GC 71–37 and GC 71–38.**

United States District Court,
N. D. Mississippi,
Greenville Division.

Dec. 27, 1973.

A. E. Moreton, III, Asst. U. S. Atty., Oxford, Miss., for plaintiff.

Hardy Lott, Greenwood, Miss., for claimants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

In these consolidated cases, the United States, plaintiff seeks the forfeiture of 435 pinball and slot machines named as defendants under the provisions of 15 U.S.C. § 1177 on the ground that they are gambling devices within the meaning of 15 U.S.C. § 1171, which were used or possessed during the calendar year 1970 by persons engaged in the business of repairing, reconditioning, buying, selling, leasing, using or making available for use by others gambling devices without having first registered with the Attorney General as required by 15 U. S.C. § 1173(a)(3).[1] In addition, the United States seeks to recover costs of the proceeding.

Dominic Fratesi and Raymond Ristom, claimant-owners in one group of cases involving 77 machines, and A. J. Malouf, claimant-owner of 358 machines in another group of cases, oppose forfeiture on the grounds that: (1) the seized pinball machines are not gambling devices; and (2) that § 1173(a)(3) is unconstitutional on its face and as here applied, at least as to the slot machines, since compliance with the registration and record-keeping requirements subject the owners to self-incrimination, contrary to the Fifth Amendment.[2]

The record before the court consists of the pleadings and stipulated facts. It appears that 165 pinball machines (50 owned by Fratesi and Ristom, 115 owned by Malouf) were seized while located at various customer locations, such as cafes, pool halls, and amusement centers, and also at Malouf's business premises known as Malouf Music Company, and Fratesi and Ristom's Dixon Amusement Company. The slot machines, 243 owned by Malouf and 27 owned by Fratesi and ·Ristom, were not in active use and, when seized, were found stored on the warehouse premises of their owners. By separate answers, claimants admitted

1. 15 U.S.C. § 1173(a)(3) reads as follows: "It shall be unlawful for any person during any calendar year to engage in the business of repairing, reconditioning, buying, selling, leasing, using, or making available for use by others any gambling device, if in such business he buys or receives any such device knowing that it has been transported in interstate or foreign commerce after the effective date of the Gambling Devices Act of 1962, unless, after November 30 of the preceding calendar year and before the date on which he buys or receives such device, such person has registered with the Attorney General under this subsection."

2. Amendment V: . . . [No person] shall be compelled in any criminal case to be a witness against himself . . . .

that during the calendar year 1970, they were engaged in the business of repairing, reconditioning, buying, leasing, using and making available for use by others the pinball machines sought to be condemned; that they knew that such machines had not been manufactured in Mississippi and at some prior time must have been transported in interstate commerce; and that they had not registered either the pinball machines or the slot machines with the Attorney General, nor did they maintain records thereon. The government offered no proof that claimants engaged in any business or other activity, or made any use, of the slot machines beyond the mere act of possessing them.

■ The parties stipulate that the only issue of disputed fact is whether the "free-play" pinball machines are gambling devices within the meaning of the federal statute; claimants admit that the conventional slot machines seized are gambling devices.[3] The characteristic features of the pinball machines are described at length in the stipulation filed in the case. They are coin-activated, electrically operated machines manufactured by Bally Manufacturing Corporation of Chicago, Illinois. These machines feature such devices as a meter to erase games won when the player is paid off, and certain circuitry which may be activated by insertion of additional money into the machine which may give certain game advantages to the player, i. e., increase the possibility of his winning on the basis of chance.

That the machines do not themselves pay anything of value but only "free" or additional games is not determinative of their status as gambling devices. Since the machines can be operated so that a person may be entitled to receive money or property as the result of the application of an element of chance, and were designed and manufactured primarily for use in connection with gambling, they are gambling devices under § 1171(a)(2). United States v. Five Gambling Devices, 346 F.Supp. 999 (W. D.La.1972); United States v. Various Gambling Devices, 340 F.Supp. 1200 (N.D.Miss.1972), aff'd 478 F.2d 1194 (5 Cir. 1973). In *Various Gambling Devices*, claimant Fort appealed from a judgment forfeiting 31 pinball machines identical to the pinball machines in issue and which District Judge Orma R. Smith held were gambling devices. The Fifth Circuit expressly found that such pinball machines, when not registered under the Gambling Devices Act of 1962, were lawfully subject to seizure and forfeiture to the United States. We thus hold that under the broad federal definition the Bally pinball machines, no less than conventional slot machines, were gambling devices.

■ Since the forfeitures of the pinball machines in the present proceedings are based upon the failure to register them under § 1173(a)(3), and not for unlawful interstate transportation under § 1172, the fact that so-called "free-game" pinball machines are legal under Mississippi law[4] is of no consequence.

---

3. § 1171. Definitions

(a) The term "gambling device" means—

(1) any so-called "slot machine" or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (b) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or

(2) any other machine or mechanical device (including, but not limited to, roulette wheels and similar devices) designed and manufactured primarily for use in connection with gambling, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or

(3) any subassembly or essential part intended to be used in connection with any such machine or mechanical device, but which is not attached to any such machine or mechanical device as a constituent part.

4. Miss.Code Ann. § 2047 provides in pertinent part:

"It shall be unlawful for any person or persons, firm, copartnership, or corporation

That the machines may be lawful under state law does not render them exempt from the registration and record keeping requirements of § 1173. It is only where the forfeiture is based upon § 1172, because of the express exemption contained therein, that the legal status of a device such as a free game pinball machine specifically sanctioned by the statute of the state into which the device is transported becomes material. Compare United States v. Two Coin-Operated Pinball Machines, 241 F.Supp. 57 (W.D.Ky.1965) where forfeiture was upheld under Kentucky law, with United States v. One Bally Bounty In-Line, etc. Pinball Mach., 261 F.Supp. 187 (D.Md. 1966), where claimant prevailed under Maryland law.

■ Claimants next argue that since the slot machines, which were admittedly not in use and did not form part of their business activity, were at all pertinent times stored in a warehouse, they were not subject to forfeiture because of the failure to register. This contention must be rejected since each claimant, because of his admitted activities, was a *person* required to register under the Act and therefore obligated to maintain records on "each gambling device owned or possessed by him or in his custody." § 1173(c)(1). This principle was clearly settled by the Fifth Circuit in *Various Gambling Devices*, supra, when the claim was made that certain pinball machines manufactured prior to the effective date of the Act should be exempt from the forfeiture of other gambling devices in the possession of an unregistered owner. Answering this point, the Fifth Circuit declared:

"The structure of the Act defeats this argument. It is not the machines, but the persons possessing them who are required to be registered with the Attorney General. 15 U.S.C.A. § 1173(a)(3). The registrant is then required to maintain records of *all* gambling devices in his possession or use:

Every person required to register under subsection (a) of this section for any calendar year shall, on and after the date of such registration or the first day of such year (whichever last occurs), maintain a record by calendar month for all periods thereafter in such year of

. . .

(B) each gambling device owned or possessed by him or in his custody. . . .

15 U.S.C.A. § 1173(c)(1).

This provision is directed toward regulation of the registrant's activities. Since he was required to register upon the receipt of machines after the effective date of the Act, he had to maintain records for all of his machines, including the ten received before the Act. Thus, any machine which he was required to record, and did not, is 'possessed or used in violation of the provisions of this chapter' and may be seized and forfeited to the United States. 15 U.S.C.A. § 1177. There is no indication that Congress intended to restrict forfeiture to only those machines which trigger the registration requirement." (478 F.2d at 1199).

■ Claimants next raise as a defense to the forfeiture the privilege against self-incrimination in view of the fact that a number of slot machines, the mere possession of which was illegal under Mississippi law, were seized in the proceedings. Claimants rely upon Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct.

to have in possession, own, control, display, or operate any cane rack, knife rack, artful dodger, punch board, roll down, merchandise wheel, slot machine, pinball machine, or similar device or devices.

\*  \*  \*  \*  \*

"Provided, however, that pinball machines which do not return to the operator or player thereof anything but free additional games or plays shall not be deemed to be gambling devices, and neither this act nor any other act shall be construed to prohibit same."

709, 19 L.Ed.2d 906 (1968); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), in support of the proposition that their compliance with § 1173 would be violative of their Fifth Amendment right against self-incrimination. The argument is made that compliance with § 1173 would require that they maintain records on slot machines, illegal under state law, at a designated place for not less than five years and subject to inspection by FBI agents at all reasonable times, and that such record keeping would subject them to real and substantial danger of self-incrimination. The registration and record keeping requirements of the Act are set forth in the margin.[5]

Plaintiffs further contend that even if § 1173 were constitutional on its face, the forfeiture as to the slot machines is unconstitutional under *Marchetti, Grosso* and *Haynes.*

The Supreme Court, in United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), determined that the Fifth Amendment privilege against self-incrimination, in a proper case, may be invoked in forfeiture proceedings the same as in a criminal prosecution. In *Coin and Currency,* money used in gambling was attempted to be forfeited under the provisions of 26 U.S.C. § 7302 authorizing the forfeiture of property used in violation of the internal revenue laws; the forfeiture was set aside under *Marchetti* and *Grosso* since the claimant would

---

5. § 1173 provides:

"(a)(4) Each person who registers with the Attorney General pursuant to this subsection shall set forth in such registration (a) his name and each trade name under which he does business, (B) the address of each of his places of business in any State or possession of the United States, (C) the address of a place, in a State or possession of the United States in which such a place of business is located, where he will keep all records required to be kept by him by subsection (c) of this section, and (D) each activity described in paragraph (1), (2), or (3) of this subsection which he intends to engage in during the calendar year with respect to which such registration is made.

\* \* \* \* \*

"(b)(2) Every manufacturer of a gambling device defined in paragraph (a)(3) of section 1171 of this title shall, if the size of such device permits it, number seriatim each such gambling device manufactured by him and permanently affix on each such device, so as to be clearly visible, such number, his name, and, if different, any trade name under which he does business, and the date of manufacture of such device.

"(c)(1) Every person required to register under subsection (a) of this section for any calendar year shall, on and after the date of such registration or the first day of such year (whichever last occurs), maintain a record by calendar month for all periods thereafter in such year of—

\* \* \* \* \*

"(2)(B) in the case of each such gambling device defined in paragraph (a)(3) of section 1171 of this title, the information required to be affixed on such gambling device by subsection (b)(2) of this section, or, if such gambling device does not have affixed on it any such information, its catalog listing, description, and, in the case of each such device owned or possessed by him or in his custody, its location.

\* \* \* \* \*

"(d) Each record. required to be maintained under this section shall be kept by the person required to make it at the place designated by him pursuant to subsection (a)(4)(C) of this section for a period of at least five years from the last day of the calendar month of the year with respect to which such record is required to be maintained.

\* \* \* \* \*

"(f) Agents of the Federal Bureau of Investigation shall, at any place designated pursuant to subsection (a)(4)(C) of this section by any person required to register by subsection (a) of this section, at all reasonable times, have access to and the right to copy any of the records required to be kept by this section, and, in case of refusal by any person registered under such subsection (a) to allow inspection and copying of such records, the United States district court for the district in which such place is located shall have jurisdiction to issue an order compelling production of such records for inspection or copying."

have been required to register as a gambler to have avoided the forfeiture of the money seized. The Court reasoned that the forfeiture statutes, viewed in their entirety, "impos[ed] a penalty only upon those who are significantly involved in a criminal enterprise." (401 U.S. at 722, 91 S.Ct. at 1045). Although *Coin and Currency* was discussed by the Fifth Circuit in *Various Gambling Devices,* it was in the context of the notice requirements of the Due Process Clause of the Fifth Amendment, and the Court had no occasion to be definitive as to the self-incrimination clause. It should be noted, however, that the devices seized in that case were pinball machines, lawful under Mississippi law. Similarly, only pinball machines lawful under state law were involved in the district court decision of the Western District of Louisiana, United States v. Five Gambling Devices, supra.

We hold that the defense of self-incrimination may not be validly raised to defeat the forfeitures as to any of the gambling devices seized in the cases sub judice. It is important to note that the instant proceedings are based upon a violation of § 1173(a)(3), the registration requirement, and not upon the record keeping requirements imposed by § 1173(c)(1), (c)(2), (d), and (f). By 1173(a)(4), the registrant is required to do no more than submit to the Attorney General four types of information: (1) his name, including any trade name; (2) the address of each place of business; (3) the address of each place where he will keep records required by the Act; and (4) each enumerated activity in which he intends to engage. In order to register, a claimant is not required to divulge any information about what types of gambling devices he may have in his possession or intends to handle in his business activities. We agree with the government that information of this type is, on its face, wholly innocuous, and while it may identify the registrant, it does not by itself implicate him in criminal conduct. We fail to see that giving the four answers required by the registration section would have subjected the claimants to a real and appreciable danger of self-incrimination. The registration is for the carrying on of a noncriminal activity, i. e., "the business of repairing, reconditioning, buying, selling, leasing, using or making available for use by others of any gambling device." One who engages in a business of this type may deal in various types of coin-operated machines which, although broadly classified by the Act as gambling devices, are nevertheless lawful to possess or use. The fact that certain machines may be put to an illegal use, or, indeed, their possession may be illegal under state law, does not, in our opinion, permeate all aspects of a registrant's business with illegality or make persons who register under § 1173(a)(3) a selective group inherently suspect of criminal activity.

The Supreme Court cases cited by claimants are inapposite since in each of them, the information sought, unlike the data elicited by § 1173(a)(4), placed the complying registrants in a highly selective group inherently suspect of criminal activities. In *Marchetti,* the privilege against self-incrimination was upheld in a prosecution for the defendant's failure to register and pay the federal occupational tax required for engaging in accepting wagers. Internal Revenue Service Form 11–C required the taxpayer to declare that he was in the business of accepting wagers, a criminal offense in the State of Connecticut where Marchetti resided. Upholding the privilege, the Supreme Court held that: "Every aspect of petitioner's wagering activities thus subjected him to state or federal prosecution . . . In these circumstances it can scarcely be denied that the obligation to register and pay the occupational tax created for petitioner 'real and appreciable', and not merely 'imaginary and unsubstantial', hazards of self-incrimination." 390 U.S. at 47, 48, 88 S. Ct. at 702.

In *Grosso*, the privilege was upheld as a defense to a prosecution for failure to pay the federal excise tax imposed on

wagering. The payment of the tax was accomplished by filing special Internal Revenue Form 730, which demanded answers to each question that evidenced "in the most direct fashion the fact of the taxpayer's wagering activities" which were unlawful under state law. Since these answers "would directly and unavoidably have served to incriminate him," Grosso's claim of privilege "as to the *entire* tax payment procedure was, therefore, neither 'extreme' nor 'extravagant'," and posed substantial hazards of self-incrimination. 390 U.S. at 67, 88 S.Ct. at 713. (Emphasis added).

In *Haynes*, the privilege against self-incrimination was upheld to a defense against prosecution of the possession of an unregistered firearm. This result obtained when the Court found that the registration requirement was "directed principally at those persons who have obtained possession of a firearm without complying with the Act's other requirements, and who, therefore, are immediately threatened by criminal prosecutions under §§ 5851 and 5861. They are unmistakably persons 'inherently suspected of criminal activities.'" 390 U.S. at 96, 88 S.Ct. at 730.

In *Leary*, the privilege against self-incrimination was upheld as a defense to a prosecution for failure to pay the federal transfer tax imposed on marihuana. This payment was accomplished by the transferee obtaining a written application form from Internal Revenue Service and paying the tax, and the application directly required the transferee to disclose the amount of marihuana transferred and whether or not he was registered. Possession of marihuana was unlawful in New York where the transfer took place and in Texas where the defendant was arrested with the marihuana. The Court sustained the privilege by concluding: "Since compliance with the transfer tax provisions would have required petitioner unmistakably to identify himself as a member of this 'selective' and 'suspect' group, we can only decide that when read according to their terms, these provisions created a 'real and appreciable' hazard of incrimination." 395 U.S. at 18, 89 S.Ct. at 1539.

The Supreme Court, in California v. Byers, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971), has expressly limited the application of the *Marchetti, Grosso* and *Haynes* decisions in these words (at 430, 91 S.Ct. at 1539):

"In all of these cases the disclosures condemned were only those extracted from a 'highly selective group inherently suspect of criminal activities' and the privilege was applied only in 'an area permeated with criminal statutes'—not in 'an essentially noncriminal and regulatory area of inquiry.'"

The sole danger of self-incrimination which claimants here can possibly show may arise from the event that when they were required to register with the Attorney General what was an essentially lawful business, they were also committing an unlawful act by possessing the slot machines. For this single circumstance to relieve them from the duty of registering their entire business would be, in the words of Mr. Justice Holmes, "an extreme if not extravagant application of the Fifth Amendment." United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), is a case squarely in point. In *Sullivan*, the defendant was convicted of wilfully refusing to file an income tax return; his defense rested upon a claim of privilege against self-incrimination since his income was wholly or in large part derived from violations of the National Prohibition Act. The Court, rejecting this defense, upheld the conviction as follows:

"If the form of return provided called for answers that the defendant was privileged from making he could had raised the objection in the return, but could not on that account refuse to make any return at all. We are not called on to decide what, if anything, he might have withheld. Most of the items warranted no complaint. It would be an extreme if not an extravagant application of the 5th Amendment to say that it authorized

a man to refuse to state the amount of his income because it had been made in crime. But, if the defendant desired to test that or any other point he should have tested it in return so that it could be passed upon. He could not draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law." 274 U.S. at 263, 47 S.Ct. at 607.

Although *Sullivan* was decided long before *Marchetti* and its progeny, yet carefully preserved by the opinions of those holdings, the *Sullivan* doctrine remains substantially unimpaired. See California v. Byers, supra.

We conclude that claimants could not avoid registering their lawful gambling machine business because they were also in possession of some illegal devices, especially since the act of registration would not have disclosed any criminal activity whatever. We are not here called upon to address the question of whether the government might lawfully forfeit the illegal slot machines because claimants, having registered with the Attorney General, thereafter failed to keep records as to the illegal machines. In forfeiture proceedings of that nature, a duly registered owner, directly confronted with criminal prosecution from records required to be kept by him as to an illegal device, would have the clear opportunity to defend upon a claim of Fifth Amendment privilege, but this is a far cry from a claim of privilege in proceedings to forfeit property for his failure to register a lawful activity. Since the registration requirements imposed by the Gambling Devices Act are wholly separate and distinct from the record keeping requirements of § 1173(c), (d), and (f), and require different considerations pertinent to the privilege against self-incrimination, we reject the defense and uphold forfeitures in all the cases presently before the court.

■ The United States is entitled to recover costs in these actions. 28 U.S.C.

§ 1918 provides: "(a) Costs shall be included in any judgment, order, or decree rendered against any person for the violation of an Act of Congress in which a civil fine or forfeiture of property is provided for." This section obligates claimants to pay as costs all of the ordinary fees and charges of the clerk, marshal, attorneys' docket fees, and includes under § 1921 special expenses incurred in attachment proceedings, for travel and storage of property and other transportation expenses. In these cases the United States has incurred substantial marshals' fees for actual storage costs because of necessary delay in trial pending the outcome of the issues in United States v. Various Gambling Devices, supra. In those proceedings all costs were taxed to claimants, and the order in the present cases shall so provide.

The United States Attorney is directed to submit to the court orders sustaining the attachments in each of the cases and disposing of the property according to law, taxing claimants with all costs of court.