UNITED STATES of America, Plaintiff,

v.

SIXTEEN ELECTRONIC GAMBLING DEVICES SEIZED ON AUGUST 5, 1983 FROM KEEAUMOKU AMUSE-MENT, 825 KEEAUMOKU STREET, HONOLULU, HAWAII, Defendants.

In re PACIFIC AMUSEMENT CO., LTD., Claimant.

Civ. No. 83–0855.

United States District Court, D. Hawaii.

Oct. 3, 1984.

Michael Chun, Asst. U.S. Atty., Daniel A. Bent, U.S. Atty., Honolulu, Hawaii, for plaintiff.

Walter Horie, Honolulu, Hawaii, for Pacific Amusement Co., Ltd., claimant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SAMUEL P. KING, District Judge.

This is an action to forfeit sixteen (16) electronic gambling devices. This Court,

having rendered on September 24, 1984 a decision in favor of the plaintiff, hereby adopts its Findings of Fact and Conclusions of Law as follows:

## FINDINGS OF FACT

1. On August 5, 1983, Special Agents of the Federal Bureau of Investigation and Police Officers of the Honolulu Police Department seized the sixteen (16) defendant electronic gambling devices from Keeaumoku Amusement, Honolulu, Hawaii.

2. None of the gambling devices were manufactured in the State of Hawaii.

3. Each device contains mini-computer components which generate electrical impulses to create images on a screen.

4. To initiate play on a machine a player inserts one or more coins, the player then activates the device by activating one or more buttons.

5. Some of the machines have additional features which require the player to perform additional functions.

6. The outcome of play produces a combination of images or symbols which do not occur in a predetermined sequence, but strictly at random.

7. Each machine has a meter or provision for a meter to cumulatively record the number of coins inserted into the device and additional meters to record credits awarded, games played and unused credits or a method to calculate unused credits removed.

8. Each machine pays off in additional credits for each winning combination displayed on the face of the device.

9. By betting additional credits or inserting additional coins a player can increase the payoff ratio for each winning combination displayed on the face of the device.

10. Each machine is designed and manufactured to retain a predetermined percentage of all coins inserted into the device. This retention ratio is commonly referred to as the "house percentage" and applies only to games of chance.

11. Each device can be set to retain greater percentages if the owner or operator so desires.

12. Several of the electronic video gambling devices attempt to duplicate some of the more popular casino-type games such as "Draw · Poker," "Five Card Stud", "Black Jack," "Keno," "Joker's Wild," "slot machines (Wild Arrow)" to name a few.

13. "Credit," when used in conjunction with electronic video display gambling devices that simulate casino-type games such as "poker," "black jack," or "keno," is something of value.

14. When a coin is inserted into one of the defendant devices a "credit" will be recorded on a credit display meter which appears on the screen. For every coin inserted into the device a credit will be recorded.

15. When a player is awarded credits, for obtaining a winning combination, these credits will also be recorded on the same credit display meter. The credits recorded for coins and credits awarded for winning combinations are recorded accumulatively, on the same meter; therefore, since no distinction is made, they must be of the same value, namely the value of the coin required to begin play.

16. One exception to the previously stated process is if the device will accept only one coin. The credit for this coin is recorded on the bet meter. If the player should win, the credits awarded will be recorded on the credit display meter. When the players makes additional bets, these credits will be subtracted from the credit display meter and recorded on the bet meter. Even though the recording process of the credits is different, the value of the credit is the same as the value of the coin inserted to initiate play because both the coin credit and the awarded credit will be recorded on the bet meter when a wager is made.

17. A "credit" can apply only to a gambling device. A player may accumulate many credits, and use one or several cred-

its on each play. Credits are used to increase pay-off ratios and to activate additional features.

18. The length of time required for the completion of each play on a gambling device is very short in duration, in most instances, it is just a matter of five to 10 seconds and a player cannot extend the length of play.

19. Each machine has meters, or provision in the wiring harness to accommodate meters, for recording the number of coins inserted and for recording the credits that are "knocked off" or erased.

20. Each machine has a knock-off switch or provisions for a knock-off switch by which the owner may remove unused credits.

21. Each machine has a credit meter which will register at least ninety-nine (99) credits and in some cases up to nine thousand nine hundred ninety-nine (9,999) credits.

### CONCLUSIONS OF LAW

■ 1. Evidence presented by an expert witness is sufficient to establish the characteristics of gambling devices. *United States v. H.M. Branson Distributing Co.*, 398 F.2d 929 (6th Cir.1968). The characteristics of the defendant devices are established by the Declaration of William Holmes.

■ 2. A "gambling device" is any machine designed and manufactured primarily for use in connection with gambling, and by the operation by which a person may be entitled to receive, as the result of the application of an element of chance, any money or property. 15 U.S.C. § 1171(a)(2).

■ 3. Whether a machine was "designed and manufactured primarily for use in connection with gambling" and "by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, money or property," can be determined by examining its characteristics or features. Among the characteristics or features to be found in gambling devices are a meter re-

cording the number of credits earned by a player and a knockoff button to erase credits when he is paid off (*United States v. 5 Gambling Devices*, 346 F.Supp. 999, 1001 (W.D.La.1972); *United States v. Various Gambling Devices*, 368 F.Supp. 661, 663 (N.D.Miss.1973); *United States v. 18 Gambling Devices*, 347 F.Supp. 653, 656 (S.D. Miss.1972)), the provision for multiple coin insertion in order to increase the reward for successful play (*United States v. Two Coin-Operated Pinball Machines*, 241 F.Supp. 57, 59 (W.D.Ky.1965)), the great number of credits which can be achieved by players (*Id.*), and a meter which recorded only those credits which were knocked off. (*United States v. 18 Gambling Devices, supra* at 661; *United States v. Two Coin-Operated Pinball Machines, supra* at 59).

■ 4. The characteristics and features rendering these machines "peculiarly and uniquely suited for gambling purpose" (*United States v. Two Coin-Operated Pin Ball Machines, supra* at 59) are built into each of the machines. They all have knock off switches to erase credits from the machines. They all have meters either in the circuitry or in the form of an electro-mechanical device which counts the number of credits erased from the machine. Most have multiple coin features by which the player can bet more than one coin or credit, thereby increasing the potential payoff. They all have credit meters with the capability of recording an excessive number of credits. The length of time required for completion of each play is very short in duration, in most instances, just a matter of five to ten seconds. A player cannot, regardless of alleged skill levels or capabilities, extend the length of play. All defendants have the capability of being programmed to retain a predetermined percentage of all coins inserted. The outcome of play occurs strictly at random.

5. The defendants are gambling devices, as defined in 15 U.S.C. § 1171, and they were transported into the State of Hawaii from a place outside, in violation of 15 U.S.C. § 1172; therefore, they are sub-

ject to forfeiture under the provisions of 15 U.S.C. § 1177.

Accordingly, the complaint of the United States for forfeiture is granted, judgment is entered in favor of the United States and the defendant gambling devices are hereby forfeited.