SUN DESIGN VIDEO, demandante y recurrido, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO y el SECRETARIO DE JUSTICIA, demandados y peticionarios.

*Número:* CE-92-338    *Resuelto:* 26 de agosto de 1994

*Anabelle Rodríguez, Procuradora General, Reina Colón de Rodríguez, Subprocuradora General,* y *Rosemary Corchado Lorent, Procuradora General Auxiliar,* abogadas de El Pueblo; *Pedro Pereira Esteves,* abogado de la parte recurrida.

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

La Procuradora General comparece ante nos y solicita la revisión de la sentencia dictada por el Tribunal Superior (Sala de Bayamón), que declara con lugar la demanda de impugnación de confiscación presentada por Sun Design

Video (en adelante Sun Design) y ordena la devolución de las máquinas de video confiscadas o, en su defecto, el pago del valor tasado de éstas. Sostiene que estas máquinas utilizadas por Sun Design no son juegos de azar y, por ende, no son ilegales. Revocamos.

## I

El 15 de junio de 1990 fueron confiscadas, mediante una orden del Departamento de Justicia, varias máquinas de video conocidas como "Hi–Lo Double Up" y "Play 8 Lines" y, además, se confiscó la suma ascendente a doscientos setenta y cinco dólares con veinticinco centavos ($275.25) que pertenecían al negocio Sun Design. Éstas fueron confiscadas por constituir una violación a la Ley de Juegos de Azar, Ley Núm. 11 de 22 de agosto de 1933 (15 L.P.R.A. secs. 82–84)(1) y a la Ley Núm. 221 de 15 de mayo de 1948, enmendada en 30 de julio de 1974 (15 L.P.R.A. secs. 71–79).

El 16 de julio de 1990 Sun Design impugnó la confiscación y alegó que ésta se había llevado a cabo sin tener como base la comisión de un delito. Por lo tanto, sostuvo que la confiscación había sido ilegal y arbitraria y, además, violaba sus derechos constitucionales al privarlo de su propiedad sin un debido procedimiento de ley.

Celebrada la vista en la cual se discutió la ilegalidad de este tipo de máquina, el Tribunal Superior declaró con lugar la impugnación de la confiscación y ordenó la devolución de las máquinas o, en su defecto, el pago de su valor tasado. Dicho foro concluyó que las máquinas en el caso de autos no eran ilegales per se porque no concedían algo de valor pecuniario al jugador que resultase ganador. Por ende, determinó que las máquinas no violaban la Ley

---

(1) La orden de confiscación establece que el equipo confiscado es ilegal per se conforme la Ley Núm. 11 de 22 de agosto de 1933 (15 L.P.R.A. secs. 82–84) y, además, estaba situado en un establecimiento comercial abierto al público.

Núm. 11, *supra*, ni la Ley Núm. 221, *supra*, que prohíben los juegos de azar.

En su comparecencia ante nos, la Procuradora General sostiene que el Tribunal Superior no apoyó sus conclusiones y determinaciones de derecho sobre prueba alguna. Alega que la parte que sostiene la afirmativa de una controversia tiene el peso de la prueba, según la Regla 10 de Evidencia, 32 L.P.R.A. Ap. IV, y que, en el caso de autos, Sun Design no descargó adecuadamente su responsabilidad debido a que no presentó prueba alguna que demostrara que las máquinas confiscadas no eran de las prohibidas por ley. Simplemente se limitó a presentar una demanda escueta y a argumentar el día de la vista. Además, aduce que las máquinas confiscadas eran ilegales, por cuanto en sus características y funcionamiento operaban como las de juegos de azar, cuyo uso está vedado por la Ley Núm. 11, *supra.*

Oportunamente, expedimos el auto y le concedimos a Sun Design el término reglamentario de treinta (30) días para someter su alegato. Aunque le extendimos el término en varias ocasiones, Sun Design nunca compareció.

## II

Con anterioridad a la legalización de ciertos juegos de azar en Puerto Rico, se permitía en nuestra Isla el funcionamiento de máquinas tragamonedas en los establecimientos públicos. La proliferación de dichas máquinas y el uso indebido de éstas, como un medio de explotación a las personas de menos recursos económicos, motivó que la Asamblea Legislativa —mediante la Ley de Juegos de Azar— prohibiera la introducción, la manufactura, el uso, la posesión o el funcionamiento, tanto de las máquinas tragamonedas como de cualquier otra clase de máquinas que puedan usarse para fines de juegos de azar. El estatuto prohíbe las máquinas en cualquier forma que puedan ser

manipuladas y cualquier sustituto, parte o accesorio de éstas será considerado ilegal. Sec. 3 de la Ley Núm. 11, *supra*, 15 L.P.R.A. sec. 82.(²) La Sec. 4 de la referida ley, 15 L.P.R.A. sec. 83, establece que toda persona que viole cualesquiera de las disposiciones antes mencionadas incurrirá en un delito menos grave y se castigará con la pena de reclusión por un término que no excederá de seis (6) meses o una multa que no exceda de quinientos dólares ($500), o ambas a discreción del tribunal.(³)

■    No obstante, la deseabilidad de tomar medidas positivas para proteger la industria turística en Puerto Rico motivó a la Legislatura a promulgar la Ley Núm. 221, según enmendada, *supra*, que crea una excepción a la prohibición de los juegos de azar y autoriza los juegos de ruleta, dados, barajas y bingos en salas de juego operadas con franquicia expedida por el Comisionado de Instituciones Financieras.(⁴) Además, esta ley autoriza y legaliza la ad-

---

(²) El Art. 299 del anterior Código Penal de 1ro de marzo de 1902, el cual fue dejado en vigor por el Art. 278 de la Ley Núm. 115 de 22 de julio de 1974 (33 L.P.R.A. sec. 4622), también prohíbe los juegos de azar y tipifica su uso como delito menos grave. Además, este ordenamiento autoriza al Gobierno de Puerto Rico a embargar, confiscar y destruir todo artículo y propiedad que se utilice en relación con dichos juegos de azar, excepto el dinero, el que se ingresará en el tesoro estatal. El artículo dispone que cuando los artículos y las propiedades sean embargadas en establecimientos abiertos al público se presumirá, a los fines de su confiscación, que dichos artículos y propiedades se usaron para el juego, hasta tanto se demuestre lo contrario.

(³) La Sec. 2 de la Ley Federal Núm. 81–906 de 2 de enero de 1951, conocida como *The Gambling Devices Transportation Act*, según enmendada por la Ley Federal Núm. 87–840 de 18 de octubre de 1962, conocida a su vez como *The Gambling Devices Act of 1962* (15 U.S.C. sec. 1172), prohíbe la transportación de máquinas de juegos de azar a un estado, al Distrito de Columbia o a una posesión de Estados Unidos desde cualquier lugar fuera de éstos, con las excepciones siguientes: cuando un estado haya aprobado una ley que exima a dicho estado, o a una subdivisión suya, de las disposiciones de esta sección; cuando dichas máquinas se utilicen en salas de juegos de azar con licencia para operar como tales, conforme a la ley estatal aplicable, o cuando una ley estatal permita específicamente dichas máquinas.

La Sec. 7 de la ley antes citada, 15 U.S.C. sec. 1177, autoriza al Gobierno federal a confiscar las máquinas de juegos de azar que sean transportadas en el comercio interestatal en violación de las disposiciones de dicho estatuto.

(⁴) A tenor con el Art. 7 de la Ley Núm. 4 de 11 de octubre de 1985 (15 L.P.R.A. sec. 71), todas las funciones, los poderes y los deberes del Secretario y/o Departamento de Hacienda en relación con las secs. 71 a 79 del título 15 de L.P.R.A. fueron transferidos a la Oficina del Comisionado de Instituciones Financieras.

quisición y/o el arrendamiento, la transportación, la introducción, la posesión, el uso, el mantenimiento y el funcionamiento de las máquinas conocidas como tragamonedas, única y exclusivamente cuando éstas sean introducidas por la Compañía de Turismo, para que ésta las ubique y opere —con exclusividad— en las salas de juego explotadas bajo franquicia expedida por el Comisionado de Instituciones Financieras.([5])

■ Aunque los estatutos antes descritos no contienen una definición de lo que son los juegos de azar, nuestra jurisprudencia ha esbozado los siguientes criterios que, por tradición, caracterizan este tipo de juego ilegal: (1) el pago o prestación que se hace o se promete para participar en el juego de azar; (2) el azar o suerte por medio del cual se gana el premio, y (3) por último, el premio que constituye algo de valor pecuniario que la persona recibe directamente u obtiene el derecho a recibir. *Serra v. Salesian Society*, 84 D.P.R. 322 (1961). Si una máquina tiene estos tres (3) elementos será un juego de azar per se.

■ No obstante, recientemente se han importado en

---

([5]) La Sec. 3 de la Ley Núm. 221 de 15 de mayo de 1948, según enmendada en 30 de julio de 1974 (15 L.P.R.A. sec. 72), expone las condiciones para otorgar las franquicias:

"El [Comisionado de Instituciones Financieras] queda facultado para expedir franquicias para la explotación de salas de juego de azar de ruleta, dados, barajas y bingos donde la Compañía de Fomento de Turismo podrá instalar y operar directamente las máquinas conocidas como tragamonedas a las personas naturales o jurídicas, que acrediten a su plena satisfacción las siguientes condiciones:

"(a) Poseer y administrar un hotel que permita a los turistas el uso de sus facilidades, en el cual habrá de establecerse la sala de juegos.

"(b) No haber sido convicta de delito grave, o delito menos grave que envuelva depravación moral, y gozar de buena reputación. En el caso de personas jurídicas deberán reunir este requisito todos los accionistas o socios. En todo caso, este requisito será aplicable a los verdaderos dueños, y no meramente a los dueños nominales del negocio, o de alguna participación o acción en el mismo.

"(c) Poseer los medios y la organización para establecer una sala de juegos propia para turistas en el hotel que posee o administre y que permita a los turistas el uso de sus facilidades."

Se dispone que las tragamonedas autorizadas en la sec. 71 de este título serán ubicadas y operadas por la Compañía de Fomento de Turismo de Puerto Rico única y exclusivamente en las salas de juegos de azar autorizadas por ley a funcionar en Puerto Rico.

Puerto Rico unas máquinas de apuestas que parecen ser recreativas.(⁶) Estas máquinas se operan en diferentes clases de negocios y establecimientos públicos que no son salas de juego con una franquicia expedida por el Comisionado de Instituciones Financieras. Ésta es la práctica que precisamente quería evitar la Ley de Juegos de Azar, 15 L.P.R.A. sec. 82.(⁷)

## III

Las máquinas de apuestas ilegales imitan los juegos tradicionales de los casinos, tales como el "poker", el "blackjack" y los dados, y tienen unos mecanismos sofisticados para esconder los elementos de un juego de azar. *Ilegal use of Video Gambling Machines: Hearing before the Permanent Subcomm. on Investigations of the Senate Comm. on Gobernmental Affairs*, 98th Cong. 2d Sess. 11 (1984), pág. 44 [prepared statement of William L. Holmes, Special Agent, Federal Bureau of Investigation] (en adelante *Hearing*); R.J. Rychlak, *Video Gambling Devices*, 37 U.C.L.A. L. Rev. 555, 566 (1989–1990). Excepto por el método de pago automático, estas máquinas funcionan de manera idéntica a las tragamonedas que operan en los

---

(⁶) Las máquinas de video recreativas son legales. En la máquina recreativa el nivel de habilidad del jugador afecta significativamente el resultado final de la partida. La máquina recreativa le permite al jugador usar su habilidad a través de la manipulación de las palancas, los botones y los "pinball flippers" relacionados con la interpretación visual de imágenes y campo de juego. Además, el jugador perfecciona su habilidad al jugar más partidas. En una máquina de apuestas, que siempre incluye un elemento de azar que esencialmente está más allá del control del jugador, éste alcanzará un cierto nivel de habilidad pero no mejorará más como jugador no importa cuántas veces juegue. (*Hearing: Testimony of William L. Holmes, Special Agent, Federal Bureau of Investigation*). El valor de entretenimiento de la máquina recreativa se deriva únicamente del juego en sí y no de la posibilidad de ganar dinero, como en las máquinas de apuestas.

(⁷) Este problema de las máquinas de video ilegales escaló a proporciones nacionales en Estados Unidos y el 1ro de octubre de 1984, el Subcomité Permanente de Investigaciones del Senado de Estados Unidos llevó a cabo unas vistas para explorar el problema. En dichas vistas declaró William L. Holmes, Agente Especial del F.B.I. El agente Holmes llevó a cabo un estudio exhaustivo del uso ilegal de máquinas de video de juegos de azar. Su estudio compara las características de las máquinas de entretenimiento y las de juegos de azar. Estas características son usadas en cortes estatales y de circuito para evaluar si las máquinas son o no de juegos de azar.

casinos. Ambas tienen un mecanismo para aceptar el pago inicial y otorgan un premio de valor pecuniario como resultado del elemento del azar. En lugar de contener un distribuidor automático de monedas que otorga el premio directamente al jugador, estas máquinas registran y acumulan los créditos ganados, que luego son intercambiados por dinero en efectivo en el establecimiento donde estén ubicadas. Rychlak, *supra*, pág. 565.

Si estas máquinas se examinan cuidadosamente, se descubrirán los subterfugios utilizados para esconder los elementos que caracterizan a los juegos de azar. Por ejemplo, en cuanto al elemento de la prestación, las máquinas de apuestas ilegales tienen un dispositivo para aceptar apuestas múltiples que le permite al jugador insertar varias monedas antes de que la partida comience.[8] Estas monedas se convierten en créditos que son registrados en un contador que está localizado en el interior de la máquina o en la pantalla. *Hearing*, supra, págs. 64–65; Rychlak, *supra*, pág. 568; *U.S. v. Sixteen Electronic Gambling Devices*, 603 F. Supp. 32, 34 (D. Haw. 1984); *United States v. Two Coin-operated Pinball Machines*, 241 F. Supp. 57 (W.D. Ky. 1965).

En estas máquinas de apuestas, el elemento del azar controla el resultado del juego.[9] Este equipo está diseñado

---

[8] *La prestación* es el pago o la apuesta que el jugador se arriesga a perder si no tiene éxito en el juego.

[9] *El azar* es la contrapartida de la habilidad del jugador. El vocablo "habilidad" tiene varias acepciones e interpretaciones, y en todas se concluye que la actividad requiere habilidad si un jugador puede, por sus propios actos, afectar de manera significativa el resultado final de la partida. *Ilegal Use of Video Gambling Machines: Hearing before the Permanent Subcomm. on Investigations of the Senate Comm. on Governmental Affairs*, 98th Cong. 2d Sess. 11 (1984), pág. 69 [prepared statement of William L. Holmes, Special Agent, Federal Bureau of Investigation], (en adelante *Hearing*).

En *Pueblo v. Santana*, 48 D.P.R. 808 (1935), establecimos que no es necesario, para que pueda calificarse un juego como de azar per se, que se excluya por completo el elemento de habilidad del jugador. Asimismo, en *Com. v. Two Electronic Poker Game Machines*, 465 A.2d 973, 977 (1983), la Corte Suprema de Pennsylvania explicó:

" 'A peculiar combination of luck and skill is the *sine qua non* of almost all games common to modern life. It is hard to imagine a competition or a contest which does not depend in part on serendipity. It cannot be disputed that football, baseball and

para operar en un ciclo de tiempo breve y predeterminado que el jugador no puede alterar con su habilidad. *Com. v. Two Electronic Poker Game Machines*, 465 A.2d 973 (1983); *Hearing*, supra, págs. 67–69; Rychlak, *supra*, pág. 569.[10]

Determinar el elemento del premio se presta para confusión en las máquinas de apuestas porque estas máquinas, a diferencia de las que se encuentran en los casinos, no contienen un distribuidor automático de monedas que otorga el premio directamente al jugador. Excepto por el método de pago automático las tragamonedas ilegales y las legales funcionan de manera idéntica. *Hearing*, supra, pág. 62. Veamos.

El crédito en las máquinas de apuestas representa algo de valor. Cuando una moneda se inserta en una máquina que no otorga boletos, fichas o monedas como premio, un crédito será registrado. Los créditos registrados por concepto de las monedas insertadas y los créditos otorgados por combinaciones ganadoras se acumulan en un mismo contador. Un jugador podrá acumular créditos y usar uno o varios en cada partida. Los créditos incrementan el porcentaje de ganancias. Los créditos otorgados por combinaciones ganadoras pueden utilizarse para seguir jugando o pueden ser intercambiados por dinero en efectivo en el negocio donde operan las máquinas. *Hearing*, supra, págs. 66–67; Rychlak, *supra*, págs. 567–568.

El concepto de "créditos" sólo aplica a las máquinas de apuestas. No debemos confundir el concepto de créditos de las máquinas de apuestas con el concepto de repeticiones de las máquinas recreativas. Una *repetición* se define como el jugar la partida de nuevo y se puede interpretar como un juego gratis. En las máquinas recreativas el concepto de

---

golf require substantial skill, training and finesse, yet the result of each game turns in part upon luck or chance.' "

Por lo tanto, la determinación de si el resultado del juego depende más del azar que de la habilidad del jugador se tiene que hacer caso a caso.

[10] La máquina recreativa también tiene un ciclo de tiempo predeterminado pero en ésta el jugador puede extender o interrumpir el ciclo de la máquina por su habilidad.

"repetición" significa que el jugador recibirá como bonificación el número de partidas por el mismo importe inicial que hizo. *Hearing*, supra, pág. 66.

Las máquinas de apuestas también contienen un dispositivo de bloqueo (*knock-off switch*) para borrar los créditos una vez le sean pagados al jugador ganador. Al borrar cualquier acumulación de créditos restantes en el contador de créditos, el dispositivo de bloqueo evita que el siguiente jugador pueda usar la máquina sin pagar la partida o cobrar por los créditos ganados o acumulados por el jugador anterior. En algunos casos, los dispositivos de bloqueo se encuentran integrados al circuito de las máquinas para que sólo puedan ser localizados al programar la máquina de cierta manera. *Hearing*, supra, pág. 63; Rychlak, *supra*, pág. 568; *United States v. Sixteen Electronic Gambling Devices*, supra, pág. 34; *Com. v. Two Electronic Poker Game Machines*, supra; *United States v. 5 Gambling Devices*, 346 F. Supp. 999, 1001 (W.D. La. 1972); *United States v. Various Gambling Devices*, 368 F. Supp. 661, 663 (N.D. Miss. 1973); *United States v. 18 Gambling Devices*, 347 F. Supp. 653, 656 (S.D. Miss. 1972). Estas máquinas contienen un segundo contador para registrar los créditos borrados del contador de créditos. El único propósito de los dos (2) contadores y el dispositivo de bloqueo es registrar las apuestas de los jugadores y los pagos efectuados a los ganadores. Rychlak, *supra*, págs. 565, 568.[11]

Por último, las máquinas ilegales contienen un circuito interruptor de corriente (P.I.C.) que se activa cuando surge un corte de corriente. Sin este dispositivo, todos los créditos acumulados y registrados se borrarían al restaurar la

---

[11] Los dos (2) contadores y el dispositivo de bloqueo son los mecanismos que se utilizan para contabilizar el dinero apostado y el que fue otorgado a los jugadores ganadores. Estos mecanismos son necesarios porque el dueño del negocio donde están ubicadas las máquinas generalmente no es el dueño de las máquinas. Las máquinas pertenecen a un operador que las coloca en lugares donde el público tiene acceso. Luego, las ganancias de las máquinas son divididas entre el dueño del lugar donde están ubicadas las máquinas y su dueño. Rychlak, *supra*, pág. 565.

corriente. *Hearing*, supra, págs. 64–65; Rychlak, *supra*, pág. 586.

Si una máquina contiene los mecanismos antes señalados, puede usarse con fines de juego de azar; por lo tanto, está prohibida por la Ley de Juegos de Azar, Ley Núm. 11, *supra*, cuando esté ubicada en un negocio sin la franquicia expedida por el Comisionado de Instituciones Financieras.

## IV

■ Al amparo de la Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988 (34 L.P.R.A. sec. 1723 *et seq.*), le corresponde al demandante probar que las máquinas no pueden ser usadas con fines de juego de azar.

■ El Art. 2 de la Ley Uniforme de Confiscaciones de 1988 (34 L.P.R.A. sec. 1723) establece que estará sujeta a confiscación toda propiedad que sea utilizada con relación a la comisión de delitos menos graves, cuando tales delitos menos graves estén tipificados en el Código Penal del Estado Libre Asociado de Puerto Rico y en las leyes de juegos prohibidos. Para fines de esta ley, el término "propiedad" incluye dinero en efectivo, máquinas, equipo e instrumentos, entre otros.[12]

■ El Art. 8 de la citada ley, 34 L.P.R.A. sec. 1723f, rige en lo referente a la impugnación de una confiscación. Dicho artículo establece que la demanda de impugnación deberá incoarse en la sala correspondiente del Tribunal Superior y que las cuestiones que se susciten deberán resolverse, y los demás procedimientos tramitarse, de la misma manera que si se tratase de una acción civil ordinaria. Como en los pleitos civiles, en estos casos el de-

---

[12] El Art. 1 de la Ley Núm. 14 de 10 de junio de 1993 enmendó el Art. 2 de la Ley Uniforme de Confiscaciones de 1988 (34 L.P.R.A. sec. 1723) para incluir que se presume que el dinero en efectivo que se encuentre en el lugar o en los lugares donde ocurre la incautación es el producto de la actividad ilegal.

mandante tiene el peso de probar que el objeto fue confiscado ilegalmente porque la máquina no era utilizada para fines de un juego de azar.

En el caso de marras, el Tribunal Superior determinó que las máquinas confiscadas no eran de las enmarcadas en la definición de juegos de azar, porque no cumplían con el elemento primordial que es conceder al jugador-ganador algo de valor pecuniario. De la anterior descripción de las máquinas de apuestas se desprende que el Tribunal Superior confundió los conceptos de créditos y juegos gratis. El sólo hecho de que una máquina otorgue juegos gratis no constituye suficiente prueba de que no se podía utilizar como un juego de azar. El foro de instancia se equivocó al no analizar el funcionamiento de las máquinas confiscadas para determinar si constituían un juego de azar. Véanse: *U.S. v. 294 Various Gambling Devices*, 718 F. Supp. 1236 (W.D. Pa. 1989); *Com. v. Two Electronic Poker Game Machines*, supra.

Por los fundamentos antes expuestos, *revocamos y devolvemos los autos al Tribunal Superior para que a la luz de los pronunciamientos que, por primera vez hemos hecho en esta opinión, Sun Design pueda presentar la prueba pertinente para demostrar, de ser éste el caso, que el equipo confiscado no tenía los mecanismos de las máquinas de apuestas ilegales y, por lo tanto, no podían ser utilizadas para fines de juegos de azar.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Rebollo López disintió con opinión escrita.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

No obstante estar conformes con la exposición doctrina-

ria que se hace en la opinión emitida, disentimos del *resultado* a que se llega en la misma. Como correctamente se expresa en la opinión mayoritaria emitida, los casos de confiscación deben ser tramitados como si se tratase de una acción civil ordinaria. En consecuencia, recae sobre la parte demandante, en un caso de esta naturaleza, *el peso de probar que la confiscación realizada es contraria a derecho.*

En el presente caso, la parte demandante *no* cumplió con esa obligación. *No tiene derecho a una segunda oportunidad.* Disentimos, en consecuencia, de la acción mayoritaria de devolver el caso al foro de instancia; la cual acción, precisamente, brinda esa segunda oportunidad.

Las expresiones de la Mayoría, en justificación de su acción, *no* son convincentes. Los "pronunciamientos" que, en palabras de la Mayoría, hace este Tribunal por primera vez, *no* son de tal naturaleza como para eximir de su conocimiento a un dueño de esta clase de equipo.

La situación, preconfiscación, era meridianamente clara. Toda máquina que contenga, en palabras de la Mayoría, "los mecanismos característicos" de una máquina de juego de azar es ilegal. En el presente caso le correspondía a los dueños de las máquinas confiscadas probar que sus máquinas no contenían estos "mecanismos". *No* lo hicieron. *No* cumplieron, en consecuencia, con la obligación de "probar su caso". Hoy el Tribunal, erróneamente, le concede una segunda oportunidad. Es por ello que disentimos.